DIANE KATZER, Plaintiff-Appellant, *v.* WILLIAM KATZER, JR., *et al.*, Defendant-Appellee.

First District (4th Division)   No. 62995

Opinion filed June 22, 1978.

Bruce L. Levin and Herbert H. Victor, both of Chicago, for appellant.

Michael J. Kenyon, of Chicago (Alan M. Katz, of counsel), for appellee.

Mr. JUSTICE LINN delivered the opinion of the court:

Plaintiff, Diane Katzer, was granted a judgment for divorce from defendant, William Katzer, Jr., in April 1971. The custodial portion of the judgment as modified in October 1971, awarded custody of William Katzer III, born April 25, 1967, the only child born to the parties during the marriage, jointly among plaintiff, defendant and the intervening paternal grandparents. Plaintiff appeals from an order entered by the circuit court of Cook County on August 22, 1975, which awarded defendant permanent custody of the minor child. The paternal grandmother, who survived the death of the paternal grandfather during the pendency of these proceedings, was not named in the custodial order appealed from and is not involved in this appeal.

Plaintiff contends that the trial court committed reversible error in considering a confidential report submitted by the Cook County

Department of Supportive Services and also in not permitting cross-examination of the person who prepared the report. She further contends that the trial court improperly entered the order modifying the custody of the minor child without first having found her unfit as a mother or having heard evidence that a change in circumstances warranted the modification.

While finding that the trial court committed error in certain respects, we conclude that the error was harmless and we affirm the transfer of custody of the minor child from the plaintiff mother to the defendant father.

Our summary of the facts discloses that in December 1974, defendant filed the instant petition which sought the award of temporary and permanent custody of the minor child to defendant and his mother, the paternal grandmother. The petition also requested that the Cook County Department of Supportive Services be appointed to make a written home study and social service investigation and report of all parties in interest and to submit its findings in that regard to the court. On December 18, 1974, the trial court entered an order in accordance with the petition's request for the social service study, and on December 26, 1974, the court entered a preliminary order that the minor child remain in custody of the defendant and the paternal grandmother, with whom the child apparently had been residing for several weeks, until the court could determine temporary custody. On January 6, 1975, the court ordered that defendant and the paternal grandmother have temporary custody of the minor child, with specified visitation rights in plaintiff.

Defendant's petition for award of permanent custody, as supplemented, alleged in pertinent part that from 1970 until the current time plaintiff resided in the home of Leo and Joan Pasdell, who were husband and wife, and that plaintiff maintained an adulterous relationship with Leo Pasdell, with the knowledge and consent of Joan Pasdell, and with the result that plaintiff, in October 1973, gave birth to a child who was named Jody Lee Pasdell, a derivation of the names Diane, Leo and Joan. Attached to the petition was the child's birth certificate showing Leo Pasdell as the father.

The petition further alleged that while the subject child, William Katzer III, was in plaintiff's custody in the Pasdell home, Leo Pasdell, in the child's presence, beat plaintiff and his own wife and also shot holes in the walls and ceiling of the home with a gun. It was alleged that plaintiff, with the minor child, left the Pasdell home on several occasions to live with the maternal grandparents, but in each instance she returned to the Pasdell residence. The petition recited that during the first week in November 1974, plaintiff informed defendant that she desired to leave the Pasdell home and that defendant and his mother offered plaintiff and the subject

child residence in the defendant's mother's home, where defendant also resided.

While plaintiff resided in the paternal grandmother's home, she was employed as a waitress from 4:30 p.m. until 2 a.m., and the paternal grandmother cared for the subject minor child and sent him to school. The petition further recited that in early December 1974, plaintiff stayed away from home on two nights and was told by defendant that such activity was unacceptable; and that defendant also objected to plaintiff's suggestion that she and the subject child would share an apartment with plaintiff's girlfriend and plaintiff would place the child in the care of babysitters while she worked. The petition alleged that plaintiff permanently left the paternal grandmother's home on December 9, 1974.

Plaintiff's answer advanced appropriate admissions and denials to the petition for permanent custody. In pertinent part the answer recited that plaintiff and the subject child moved into the home of the paternal grandmother on November 18, 1974, at which time she advised defendant and his mother that plaintiff and the child would remain until she found an apartment. This was agreeable to them. The answer further alleged that on December 9, 1974, plaintiff informed defendant and his mother that she found an apartment and was going to leave with the subject child, but that defendant refused to permit her to take the child, threatened her with physical harm and ordered her out of the house. Plaintiff alleged that all subsequent attempts to see the child were rejected by defendant and his mother. Plaintiff also denied that Leo Pasdell was the father of Jody Lee, and stated in the answer that Leo Pasdell's name was entered on the child's birth certificate to facilitate its adoption by Leo and Joan Pasdell, which had been contemplated by those persons during the term of pregnancy.

A hearing on defendant's request for temporary custody of the child was held on January 6, 1975. Plaintiff was called as an adverse witness pursuant to section 60 of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 60), and she was also questioned by her own counsel. She related that since December 8 or 9, 1974, she had been residing with Leo and Joan Pasdell in their home in Melrose Park. Also residing there at that time were the Pasdell's teenage son and the witness' baby, Jody Lee.

She testified she first moved into the Pasdell home in March or April, 1970, and that Jody Lee was born on October 28, 1973, which was 18 months after her divorce and while she was unmarried. She stated that Jody Lee's birth certificate listed her name as Diane Pasdell and that her driver's license also listed her name in that manner. She testified that although Leo Pasdell is listed on the birth certificate as the father of Jody Lee, he is not in fact the father. She stated she used the Pasdell name during pregnancy for convenience.

Plaintiff further testified that she was hospitalized in March 1974 for an injury received in moving a household appliance, and that Leo Pasdell did not beat her at that time nor at any other time. Between March and June, 1974, she resided at her parents' home with the subject child and Jody Lee, but prior to March she had been residing with the Pasdells. When she was with the Pasdells, the subject child was enrolled in a Melrose Park school, but when she resided with her parents in Chicago, the child was enrolled in a Chicago school. After she returned to the Pasdell residence in June 1974, where she remained until November 18, 1974, the subject child was again enrolled in the Melrose Park school. She related that the child was registered in these schools under the name of Pasdell, and that on each of these changes of residence she took both the subject minor and Jody Lee with her. However, when she moved into the paternal grandmother's residence on November 18, 1974, only the subject child accompanied her because defendant did not want Jody Lee in the house and she left him with the Pasdells.

She further stated that she moved into the paternal grandmother's home intending to secure a job and an apartment so she could get out on her own, although she testified she was afraid to live on her own. She stated that she returned to the paternal grandmother's home from work on December 6; that she was at the house on December 8, and that when she returned to the paternal grandmother's residence from work on December 9, 1974, she was refused entry.

Plaintiff testified that she spoke to defendant over the telephone a few days later and that her efforts to see the subject child thereafter were unsuccessful. Plaintiff related that she had been working as a waitress from 4:30 p.m. until midnight during which time Joan Pasdell cared for Jody Lee. She denied that Leo Pasdell had a violent temper or that he possessed firearms; and she testified there were no bullet holes in the Pasdell house.

Pursuant to section 60 of the Civil Practice Act and also pursuant to questioning by his own counsel, defendant testified at the hearing on his request for temporary custody. He related that he resided in Chicago with his 66-year-old mother. Defendant stated that the subject child currently resided in the home with him and his mother since plaintiff failed to return home from work on December 6, 1974, and that he and his mother cared for the child and sent him to school. There were no other children in the house.

Defendant testified that plaintiff and the subject child resided at the Pasdell residence from January 1974 until about April 1974, when plaintiff entered the hospital after being beaten by Leo Pasdell. He related that plaintiff telephoned him from the hospital, telling him that Pasdell had beaten her and that she had to get out of the Pasdell house. On

arrangements made by defendant, plaintiff then resided with the subject child at the home of her parents in Chicago until July, at which time she and the child returned to the Pasdell residence. Defendant stated that plaintiff left the Pasdell home sometime during the Fall of 1974, at which time she stayed with relatives, and that on all these occasions the subject child changed schools.

In early November 1974, plaintiff spoke to defendant on the telephone, saying she was in the company of Joan Pasdell and had been beaten again by Leo Pasdell, and requesting that defendant pick up the subject child from school. Defendant stated he told plaintiff she could stay at his mother's house, because he wanted the child with him. Plaintiff thereafter got a job and returned to the paternal grandmother's house every night until December 6, when she stayed away for several nights. Defendant denied that he forced plaintiff out of the house. He admitted that he had been arrested in October or November 1974 for driving "under the influence" and for assaulting a police officer while with the subject child about 10:30 p.m., and that the plaintiff took the child from the police station after midnight on that occasion.

Temporary custody was awarded to defendant and the paternal grandmother pending disposition of the petition for permanent custody.

A hearing was held on the petition for permanent custody on and following August 13, 1975. At the outset it was stipulated between the parties that the confidential report, submitted by the Cook County Department of Supportive Services to the court pursuant to its earlier order, would be received into evidence; that neither side would examine the person who prepared the report; and that the court alone would examine that person. The court thereupon read the report and questioned the person who made the report as to its authenticity and whether the sources of information had been substantiated.

Defendant testified in support of his petition for permanent custody, and plaintiff testified in support of her answer thereto. Both parties were also called by opposing counsel as adverse witnesses pursuant to section 60 of the Civil Practice Act. The testimony of each party at the hearing for permanent custody is substantially the same as that given by them at the hearing on the defendant's request for temporary custody, rendering unnecessary a detailed recital of their testimony.

Additionally, defendant testified that he was employed as a tool and die maker, that he was the sole support of his mother and the subject child, and that his mother's home was a three-bedroom building. He stated he had picked the child up at the Pasdell residence on many occasions in the past but that he did not try to secure sole custody of the child when he learned that plaintiff was pregnant or when he learned that she had been beaten by Leo Pasdell.

Defendant stated that he visited plaintiff at her mother's house between March and June, 1974, at which time she told him that Leo Pasdell was the father of Jody Lee and that the reason why she became pregnant with the child was because she and Leo and Joan Pasdell wished to share something. He also testified that when plaintiff resided with him and his mother in November and December, 1974, she had access to the house through the front door, that she came home on a regular basis during the first week of her stay there, but that her actions in that regard were sporadic thereafter. He related that three days after plaintiff did not return home, he took the subject child out of school due to illness.

Defendant said he commenced saving money to secure permanent custody of the subject child when plaintiff bore the other child in 1973. It was also brought out that defendant had several prior arrests and convictions on misdemeanor charges, all but one of which occurred prior to the death of his father in 1972. Defendant also owned five firearms, two of which were collector's pistols which were for sale; the other three weapons were shotguns and a rifle, and all of the weapons were kept under lock and were inaccessible to the subject child.

Defendant's mother, the paternal grandmother, testified in defendant's behalf at the hearing. She related that plaintiff telephoned her home on November 18, 1974, crying hysterically and requesting that defendant pick the subject child up from school. Defendant had to go to work and the witness accompanied the plaintiff in a taxi to pick up the child at school. Plaintiff appeared concerned about what Leo Pasdell might do to the child if he arrived at the school first, but she expressed no concern as to what he might do to Jody Lee.

Plaintiff told the witness she had been beaten by Leo Pasdell and that her side was black and blue as a result. She further told the witness that she did not want to stay with the Pasdells any longer, and the witness offered to let plaintiff stay at her house until she "found" herself and secured a job.

The witness testified that plaintiff secured a job as a waitress and that she returned home from work later and later as time went on. She stated that the front door to the house remained unlocked for the plaintiff. Plaintiff did not return from work on Friday, December 6, and the next contact with plaintiff was not had until Sunday when she came to the house with a girlfriend and left.

Plaintiff next came by on Monday or Tuesday of that week, at which time she wished to take the child with her to live with the girlfriend. This witness stated that plaintiff told her one of the women would work while the other babysat with the children, and that they would switch responsibilities in that regard. The witness suggested that plaintiff discuss the matter with defendant, who was not home at the time; however,

plaintiff was not heard from again. She testified that the doors to the house had not been locked over the weekend in question, and that plaintiff was at no time locked out of the house.

The paternal grandmother further testified that plaintiff told her Leo Pasdell was the father of Jody Lee and that because Leo's wife did not want any more children of her own, plaintiff would have the baby for the three of them. Plaintiff also told this witness that Leo Pasdell took money which she had saved. This witness also related that on two occasions she and the defendant had spoken to representatives of the school where they were sending the subject child. She also said that the child had been absent from school 7 or 10 days due to illness, and that the child was not in school on the day plaintiff came to the witness' house and wished to take the child with her.

In addition to the matters elicited from plaintiff during the earlier temporary custody hearing, she testified at the hearing on the petition for permanent custody that she and the subject child had lived in a cottage near the garage when she first moved onto the Pasdell property in 1970; she said she stayed in the cottage until the summer of 1973 or, as she also testified, for 2½ years. Upon vacating the cottage, plaintiff and the child moved into the Pasdell main residence, which is a four-bedroom home. Leo and Joan Pasdell occupied one bedroom, which contained a waterbed; their 15-year-old son occupied another bedroom; the subject child occupied a third bedroom; and the witness and, after its birth, her baby, occupied the fourth bedroom.

Plaintiff related that she had worked for Leo Pasdell between January 1970 and April or May, 1972, in connection with his auto service business. He paid her about $67 per week as an employee, and she paid the Pasdells $90 per month rent while she lived in the cottage. Both Leo and Joan Pasdell are employed, and after the witness had moved into the main house she cared for all the children and also contributed to the housework and to the household expenses from whatever earnings she received.

In March 1974, the witness was hospitalized for a rupture sustained in moving a household appliance, during which accident she also fell and bruised her jaw and shoulder. She denied she was hospitalized as a result of a beating from Leo Pasdell or that she ever told defendant or his mother that her injuries were the result of a beating. Plaintiff also denied that Leo Pasdell was the father of Jody Lee, or that she told defendant, his mother or her own mother that Leo Pasdell was the father. She stated she had, on occasion, slept in the waterbed in the Pasdell's bedroom, but only with Joan Pasdell when the subject child wished to sleep in her room with Jody Lee. On those occasions Leo Pasdell would sleep on the couch. She denied ever having sexual relations with Leo Pasdell.

Plaintiff also testified that she received support payments from

defendant for the subject child and that she also received support payments from the father of Jody Lee. She testified that she saw the father of Jody Lee about a year prior to her pregnancy and then three to four times a week after becoming pregnant, until August 1973. She then did not see him until January 1975, when he began making support payments to her. Plaintiff stated that this person did not always come to the Pasdell home to make the payments, and that she was uncertain whether the Pasdells would recognize him.

Plaintiff further related that she moved into the paternal grandmother's home because of her desire to find a job and an apartment in that area, which had a good school for the subject child and good transportation. She testified that she paid in full the doctor bill from Jody Lee's delivery but that she had paid only part of the hospital bill. Plaintiff testified that she had no plans to move from the Pasdell home, where she currently resided and paid no rent, and that although she had attempted to secure employment, she was unemployed at the time of the instant hearing.

Joan Pasdell testified in plaintiff's behalf. This witness corroborated plaintiff's testimony as to the injuries sustained by plaintiff in March 1974 upon moving a household appliance, and also as to plaintiff's attempts in December 1974 to unsuccessfully enter the house of the paternal grandmother. She stated that plaintiff moved into the main house from the cottage about 2½ years prior to the instant hearing, at which time, the witness believed, plaintiff was pregnant.

Plaintiff had been dating men between January and April, 1973, but the witness was unable to recall who they were, and plaintiff did not tell her who was the father of Jody Lee. Although the child's birth certificate named Leo Pasdell as the father, he was not in fact the father. Mrs. Pasdell further testified that there is a waterbed in her bedroom which is used occasionally for "family discussions." When the adults of the house desired to hold a discussion away from the children, they closed the door to the bedroom containing that bed and at times all three would get onto the bed. Her husband never slept in the bed when plaintiff slept in it with this witness.

Plaintiff's mother testified as a rebuttal witness on defendant's behalf. She related in pertinent part that she saw plaintiff in the hospital in March 1974, at which time plaintiff told her that Leo Pasdell had beaten her. The witness observed bruises on plaintiff's torso, face and legs, which took two weeks to heal. The witness took plaintiff home after the latter's discharge from the hospital because she told the witness her life at the Pasdell residence was in jeopardy because of Leo Pasdell. At this time the subject child was with plaintiff at the witness' home, while Jody Lee was with Leo Pasdell out of town. When the latter returned a week later, plaintiff had both children with her at the witness' home and Leo Pasdell

visited her twice during her four month stay there. Plaintiff also told this witness that Leo Pasdell was the father of Jody Lee, and on another occasion plaintiff telephoned her and requested the witness to pick her up because "Leo shot up the house."

Plaintiff testified in surrebuttal and substantially denied the matters testified to by her mother. She stated she and her mother did not get along well together, and that plaintiff had not resided in the family home since she was 17 years old. She did not tell her mother that Leo Pasdell was the father of Jody Lee, but only remarked that the birth certificate "reads what it reads" when her mother observed Pasdell's name on the document. In March 1974 Leo Pasdell took Jody Lee to his sister's home in Ohio to be baptized.

Leo Pasdell also testified in surrebuttal and substantially corroborated plaintiff's and Joan Pasdell's accounts of events. He testified in addition that his name appeared on the birth certificate of Jody Lee because plaintiff refused to disclose the father's identity but wished someone to care for the child in the event something happened to her. He also related that plaintiff used the Pasdell name to facilitate business matters when she worked for him, such as check cashing and the like.

Mr. Pasdell denied having sexual relations with plaintiff, and also stated he had no knowledge of threats by his wife to file for divorce when plaintiff became involved with the family. He said that plaintiff paid rent while living at the cottage, that she paid rent while living at the main house, and that he took Jody Lee out of State in order to get the child baptized. He testified he paid neither the doctor nor the hospital bill connected with the child's birth.

Following final summation by counsel for the parties, the trial court entered the order here appealed from, awarding permanent custody of William Katzer III to the defendant. The paternal grandmother was not made a party to that order.

I

Plaintiff maintains that the trial court committed reversible error in considering the confidential report ordered by and submitted to the court by the Cook County Department of Supportive Services, and also in not permitting cross-examination of the individual who prepared the report. While we are in agreement with plaintiff that the trial court's consideration of the report was in error, we do not believe the action of the court constituted prejudicial error under all the facts of the case so as to require reversal of the custodial order entered on August 22, 1975. We note that the report in question was admitted into evidence at trial and is incorporated into the record on this appeal for our perusal.

Plaintiff's contention in this regard is predicated primarily upon the

case of *Walter v. Walter* (2d Dist. 1965), 61 Ill. App. 2d 476, 209 N.E.2d 691, with secondary reliance upon *Williams v. Williams* (1st Dist. 1955), 8 Ill. App. 2d 1, 130 N.E.2d 291, and *Perisich v. Perisich* (1st Dist. 1972), 6 Ill. App. 3d 97, 284 N.E.2d 654.

In *Walter*, the reviewing court stated that the "principal vice" in the trial court's consideration of a confidential report not made a part of the record is that the court on review of the determination cannot consider the grounds upon which the trial court acted. The reviewing court further found objectionable the hearsay nature of the report, with the unavailability of its preparer for cross-examination, and also stated that any agreement between the parties to the action as to the report without the consent of the minor cannot bind the minor, who is the real party in interest in a custodial matter.

In the *Walter* case, which relied on the *Williams* case and also on *Cohn v. Scott* (1907), 231 Ill. 556, 83 N.E. 191, the reviewing court enunciated a strict rule in cases involving use of a confidential report, stating simply that use of such report by the trial court is reversible error. The *Cohn* case, relied upon in *Williams*, had likewise held that no agreement between the parties can bind the minor, whose interest is the main question to be considered. *Williams* also relied on *Crabtree v. Hagenbaugh* (1860), 23 Ill. 349, which enunciated the strict rule that the trial judge can have no conference with the jury outside the presence of the parties, without regard to whether harm had in fact been done by the court's action.

Analysis of the cases relied upon by plaintiff discloses that while the courts originally enunciated a strict rule with regard to consideration of confidential reports in custody proceedings and their effect upon the case as a whole, subsequent cases have relaxed the strictness of the rule and have considered use of the report as it bears on all the evidence.

The *Walter* court, as noted, dealt primarily with the unavailability of the confidential report for consideration on appeal. *Perisich v. Perisich* (1st Dist. 1972), 6 Ill. App. 3d 97, 284 N.E.2d 654, also relied on by plaintiff, while holding that use of the confidential report was error, also held that the record was devoid of evidence showing a change of custody to be in the child's best interest and that the appellee had not met his burden as to proof of change of circumstances to warrant modification of the custody order.

In *Carlson v. Carlson* (1st Dist. 1967), 80 Ill. App. 2d 251, 225 N.E.2d 130, the appellant argued that, absent a stipulation between the parties, the confidential report could not be entered into evidence. The court on review held that the ordering of the report by the trial court did not deprive a party of his right to cross-examine the preparer of the report and that when a further custody hearing was held it would be assumed the trial court heard only competent evidence.

The case of *Des Chatelets v. Des Chatelets* (1st Dist. 1937), 292 Ill. App. 357, 11 N.E.2d 13, involved a reversal of the trial court determination on the ground the record failed to disclose what the trial court had considered as to the confidential report. In *Mikrut v. Mikrut* (2d Dist. 1969), 113 Ill. App. 2d 446, 251 N.E.2d 84, the reviewing court stated that even assuming, as the appellee argued, the trial court did not consider the contents of the confidential report which had not been made part of the record, the other evidence in the record was insufficient to support the order changing custody. And in *Patton v. Armstrong* (5th Dist. 1972), 6 Ill. App. 3d 998, 286 N.E.2d 351, the court on review noted that, from the trial court's findings, it appeared likely that the court would have denied the petition for modification of custody without the confidential report. See also *Oakes v. Oakes* (1st Dist. 1964), 45 Ill. App. 2d 387, 195 N.E.2d 840, and *Seniuta v. Seniuta* (1st Dist. 1975), 31 Ill. App. 3d 408, 334 N.E.2d 261, with regard to permitting the trial court to privately interview the minor child *in camera* and to state for the record the results of that interview, as it relates to the earlier strict rule concerning conferences between the judge and jury outside the parties' presence.

The *Williams* and the *Oakes* cases, were considered in *Dayan v. Dayan* (5th Dist. 1967), 86 Ill. App. 2d 358, 229 N.E.2d 568, where the confidential report was admitted in evidence at trial and was available to the reviewing court. The *Dayan* court distinguished *Williams* on this ground, but held that failure of the appellant to have raised any objection to the report's admission into evidence at trial could not overcome the more serious question of whether such failure constituted a waiver of the minor's rights. The court went on to hold that although admission of the report into evidence constituted error because it affected the child's rights, the error was not reversible since a review of the entire record demonstrated that without such report the evidence substantially supported the trial court's custody award.

■■ In light of the foregoing analysis of cases, we believe *Dayan* to accurately state the law with regard to admission of confidential reports into evidence as relates to prejudicial error, and we find that it is controlling as to the circumstances of this case. We hold that admission into evidence of the confidential report prepared by the Cook County Department of Supportive Services constituted error but that in light of the other evidence adduced at trial, which supports the custodial award entered by the trial court, the error was not prejudicial.

## II

Plaintiff contends that the trial court erroneously ordered a change in custody without having first found her unfit as a parent and without having heard evidence which warranted a change of custody.

The best interests of the child is the "guiding star" in resolving the

question of custody. (*Nye v. Nye* (1952), 411 Ill. 408, 415, 105 N.E.2d 300, 304; *Maroney v. Maroney* (3d Dist. 1969), 109 Ill. App. 2d 162, 170-71, 249 N.E.2d 871, 875.) The party seeking a change in custody has the burden of demonstrating that the child's best interests warrant the change and that circumstances have changed sufficiently to permit the modification. *Sorenson v. Sorenson* (4th Dist. 1973), 10 Ill. App. 3d 980, 295 N.E.2d 347.

■■ It is not necessary for the party seeking a change in custody to show the other party is unfit as a parent, although consideration will be given to the stability of the child's current environment and the ability of each party to provide him with a good home life. (*Cave v. Cave* (5th Dist. 1971), 2 Ill. App. 3d 782, 276 N.E.2d 793; *Kline v. Kline* (3d Dist. 1965), 57 Ill. App. 2d 244, 205 N.E.2d 775.) One factor which will be considered is the character of the person with whom the party presently having custody is living and his probable effect on the child's homelife and development. Change in the custody of the child rests in the sound discretion of the trial court, whose determination in that regard will not be disturbed on review unless contrary to the manifest weight of the evidence. *Maroney v. Maroney* (3d Dist. 1969), 109 Ill. App. 2d 162, 249 N.E.2d 871; *Sorenson v. Sorenson* (4th Dist. 1973), 10 Ill. App. 3d 980, 295 N.E.2d 347.

The foregoing detailed summary of the evidence adduced at the hearing on defendant's petition for permanent custody discloses ample circumstances from which the trial court, sitting as trier of fact, could have concluded that plaintiff's current living conditions were detrimental to the well being of the child. Although denied by plaintiff and by Mr. and Mrs. Pasdell, sufficient evidence was adduced from which it could be concluded that Mr. Pasdell was the father of plaintiff's child born in October 1973, and from which it could further be concluded that plaintiff was living with that couple in a relationship otherwise detrimental to the subject child's proper development.

Evidence was adduced that plaintiff on a number of occasions left the Pasdell household because of personal conflict, taking the subject child with her and causing disruption in both the child's family and educational life. It was further disclosed that Mr. Pasdell beat plaintiff and his own wife while the subject child was in the house, and that on at least one occasion had "shot up" the house with a loaded firearm. There was evidence that plaintiff herself feared what Mr. Pasdell would do to the subject child, whereas she entertained no such fears concerning the child born to her in 1973.

■■ The turbulence, portrayed by the evidence, in plaintiff's association with the Pasdell household, of which the subject child had been a member, is to be contrasted to the relative tranquility, portrayed by the evidence, in the household of defendant and his mother. Although there

was evidence that defendant had a number of adverse contacts with the law during his adult life, these activities all but ceased upon the death of his father, at which time he became the sole support of his mother and the subject child. In any event, the weight of such matters was for determination by the trial court as trier of fact. The change in circumstances disclosed by the evidence reached well beyond the single change highlighted by plaintiff on appeal, the death of defendant's father. Based on all the evidence, and without considering the matters contained in the confidential report which had been received into evidence and which we have read, we cannot say that the trial court's award of permanent custody of the child to the defendant was contrary to the manifest weight of the evidence. Perhaps not unexpectedly, we also note that on oral argument, counsel for plaintiff indicated that plaintiff was now married to Leo Pasdell and resided with him and her child, Jody Lee.

For these reasons, the order entered by the circuit court of Cook County on August 22, 1975, awarding permanent custody to the defendant (subject to plaintiff's rights of reasonable visitation), is affirmed.

Order affirmed.

JOHNSON, P. J., and ROMITI, J., concur.