ANNETTE C. SAVRE, Plaintiff-Appellee, v. LAWRENCE W. SAVRE, Defendant-Appellant.

Third District   No. 77-469

Opinion filed June 22, 1978.

Rudolph J. Westphal, of Peoria (Dorothea O'Dean, of counsel), for appellant.

12

James S. Dixon, of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendant, Lawrence Savre, commenced this proceeding by filing a petition against plaintiff, Annette Savre, requesting that defendant be awarded custody of the parties' minor child Scott. The circuit court of Peoria County denied defendant's request and this appeal ensued.

The parties were divorced on December 28, 1966. Custody of their two minor children, Kimberly Savre and her younger brother Scott, was awarded to plaintiff. At the time of the divorce, Kimberly was 7½ years old and Scott was 4 years old. In 1972, plaintiff married William Mills and the two minor children began residing with their mother and stepfather. Since the decree of divorce was entered, defendant has also remarried. In October of 1976, defendant filed a petition to modify the decree of divorce and prayed that custody of Scott be awarded to him.

A considerable number of witnesses testified at the hearing. At the time of the hearing, Scott was 14 years of age and testified both in open court and in the trial judge's chambers with counsel for both parties in attendance. Besides Scott testifying, the plaintiff, defendant, plaintiff's husband, Scott's sister, school teachers, social workers, ministers, and friends, all testified. It would unduly lengthen this opinion to relate the testimony of the witnesses in detail. This court has examined the testimony and without minimizing the importance of any part of it, will only summarize what was testified to.

This action was precipitated in part by Scott's dislike and fear of his stepfather and his desire to live with his natural father. Various aspects of Scott's relationship with his father and his stepfather were testified to by a number of witnesses. Scott's dislike and fear of his stepfather stems from an argument between Scott and Mr. Mills approximately six months after the Mills were married. According to Scott, Mr. Mills slammed Scott's head into a wall. The version of the incident as related by Mr. and Mrs. Mills generally indicated a less severe punishment and that Scott was being disciplined for his statements during the argument, particularly Scott calling Mr. Mills a liar.

Kim Savre, Scott's 18-year-old sister, testified generally as to the existence of a strained relationship between Mr. Mills and Scott. She also testified to the Mills household taking hunting, camping and fishing trips as a family. Scott testified that on one hunting trip with Mr. Mills he had "not a bad" time. Scott also related other activities in which he and Mr. Mills participated in together.

Scott is of above average intelligence, but has a learning difficulty which prevents him from being as proficient in school as he could be. He also has difficulty in getting along with his classmates. Scott believes that

he would do better in school if he lived with his father. The nature and extent of Scott's problems were testified to by the principal of the grade school that Scott has attended for a number of years, by an individual teacher acquainted with Scott and a social worker for the Peoria School District. They each testified that Scott had expressed a desire to live with his natural father and generally discussed Scott's learning difficulties and emotional problems.

Another social worker, Michael Raschick, first met Scott when Mr. and Mrs. Mills brought him to a private, voluntary counseling agency. Both Mr. and Mrs. Mills expressed concern about Scott's declining grades and the problem he was having with his peers. Mr. Raschick indicated that Scott expressed certain misgivings about the treatment he was receiving from his parents, but that these were typical of adolescents. Scott wanted to convince the court that he wanted to live with his father, but at the same time not hurt his mother. The interaction between the Mills and Scott while together in Mr. Raschick's office seemed good.

Plaintiff is employed as an engineer with the Department of Transportation for the State of Illinois. She has a bachelor of science in civil engineering and a masters degree in engineering administration. She testified about Scott's relationship to herself and her husband, the environment of the Mills' household, and her attempts to help Scott to overcome his educational problems. According to Mrs. Mills there is no problem between Scott and Mr. Mills 80 percent of the time. During the remaining time, she was of the opinion that Scott was reacting as any 14-year-old reacts to an authority figure. Mrs. Mills stated that a similar ratio would apply to her. The Mills' household does not lack in any material aspect and it appears from the testimony of Mrs. Mills, as well as other witnesses, that she has admirably fulfilled her responsibilities as a custodial parent.

Mr. Mills testified that he is a district planning engineer. He believes that his relationship with Scott is a normal one, but that they have their disagreements.

The defendant testified that his petition was prompted in part by Scott's desire to live with him. He delayed filing a petition to be sure that Scott's request was not prompted by anything more than a temporary squabble. Defendant and his wife operate a private engineering consulting firm, which requires some traveling by defendant. We must determine whether, in light of all the evidence, the trial court abused its discretion in denying defendant's petition. We affirm.

■■ While the preference or wish of children by itself does not warrant a change of custody from one parent to another (*Elble v. Elble*, 100 Ill. App. 2d 221, 241 N.E.2d 328), the feelings of the child in custody matters should always be given serious consideration by the court. (*Rosenberger*

*v. Rosenberger*, 21 Ill. App. 3d 550, 316 N.E.2d 1.) This is so particularly when the desire or preference of the children is based upon reasons related to their best welfare. (*Swanson v. Swanson*, 1 Ill. App. 3d 753, 274 N.E.2d 465.) The paramount concern at all times in matters of child custody is the best interest of the child. (*Nye v. Nye*, 411 Ill. 408, 105 N.E.2d 300.) While the decision of the trial court is subject to review, the trial court has broad discretionary powers concerning modification of a custody provision and its decision should not be disturbed unless palpably erroneous. (*Anderson v. Anderson*, 32 Ill. App. 3d 869, 336 N.E.2d 268.) There is ample evidence supporting the trial court's decision that it is in the best interest of the minor child to continue the existing custodial provisions.

No facts appear in the record which demonstrate that either party is unfit to have ‘custody of Scott. Both have ample financial means to provide a good home and have displayed a genuine concern throughout the years for Scott's well being. Instead, our inquiry must focus on whether, based upon the record, the trial court abused its discretion in deciding that Scott's best interest would be served by allowing him to remain in the custody of his mother.

■■ In urging reversal of the trial court's decision, defendant has stressed Scott's preference to live with his father and Scott's fear of his stepfather. We believe the trial court gave proper consideration to both items. While a child's preference is an important factor in determining matters of custody, the weight it is to be given may vary depending on such things as the age, maturity, and education of the child. The ultimate decision must be resolved not only by reference to the preference of the child, but also with due regard to the facts peculiar to the case at hand. Here, Scott's preference was clearly in favor of a change in custody, but other facts militated against such a change. Without minimizing the importance of the evidence as a whole, we will note a few of these factors.

Scott's father testified that his profession required that he be gone one or two nights a week and his present wife, Kay Savre, would take care of Scott. While Scott and his father both testified that Scott got along well with Mrs. Savre, she did not take the stand, though present at the hearing, and the trial court was not able to gauge the character of a person Scott would spend extensive time with. As to Scott's fear of his stepfather, portions of Scott's own testimony tend to minimize its extent. One social worker who interviewed Scott testified that Scott felt he was being placed in the position of having to prove his environment at home with his mother and stepfather unfit in order to get his wish to live with his father. Though the testimony indicated that Mr. Mills and Scott had some difficulties in getting along, we cannot say that they were to such an extent that a change of custody was called for.

■■ The testimony generally depicted a good environment in the Mills' home, with a variety of outdoor activities being done as a family unit. We also note that there was no suggestion from the professionals acquainted with Scott's educational and emotional problems that changing the custody of Scott from plaintiff to defendant would assist in remedying Scott's difficulties at school. All things considered, we believe there was sufficient evidence from which the trial court could find that it was in Scott's best interest to remain with the plaintiff. The trial court did not abuse its discretion in denying defendant's petition.

Accordingly, the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

BARRY, P. J., and SCOTT, J., concur.