JUDITH C. DRURY, Plaintiff-Appellant, *v.* ARCHIE LEE DRURY, JR., Defendant-Appellee.

First District (2nd Division)   No. 78-412

Opinion filed October 24, 1978.

Friedman, Armstrong & Donnelly, of Chicago (James T. Friedman, of counsel), for appellant.

Edward G. Krantz and Francis X. Riley, both of Chicago, for appellee.

Mr. PRESIDING JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from an order entered by the circuit court of Cook County, divorce division, on November 30, 1977, which, *inter alia*, granted care, custody and control of a minor child, Archie Lee Drury III, to respondent-appellee Archie Lee Drury, Jr. The entry of this order followed an earlier change of custody order entered upon respondent-appellee's emergency petition for custody of minor child. Compare *Jarrett v. Jarrett* (1978), 64 Ill. App. 3d 932, 382 N.E.2d 12.

Petitioner, Judith Drury, and respondent, Archie Lee Drury, Jr., were divorced November 21, 1973. Their son, Archie Lee Drury III, age two, was placed in petitioner's custody. Respondent was ordered to support the child and provide medical and life insurance benefits for him.

On May 5, 1977, appellee filed an emergency petition for custody of minor child in the circuit court of Cook County, divorce division. Through this petition appellee alleged that Judith Drury was no longer a fit and proper person to have the care, custody and responsibility to educate the minor child (then preparing to attend school). Appellee further alleged that: the mother neglected the health and welfare of the child; the mother had no stable place of residence; the mother failed to remain home with the child; the mother had allowed the child to remain alone for long periods of time with others unfit to care for the child; the mother was unemployed and appropriated child support funds for her own use; and that the mother had refused to allow appellee to exercise his right of visitation. Appellee alleged that he would be able to properly care for and educate the child in a proper and fitting environment (his mother's six-bedroom home in Prospect Heights, Illinois in which appellee and appellee's 15-year-old sister resided). A copy of this emergency petition was mailed to Judith Drury at her Wheeling, Illinois, address.

On May 5, 1977, the circuit court of Cook County, Divorce Division, ordered that the care, custody and responsibility to educate the minor child be transferred to appellee. The court further ordered that all child support payments to Judith Drury be immediately terminated.

On June 21, 1977, Judith Drury filed, in the circuit court of Cook County, divorce division, a petition for rule to show cause. Through this petition Judith Drury alleged that appellee, on May 6, 1977, unlawfully abducted the minor child from the State of Florida (in which Judith Drury and the minor child had been residing) and secreted the child in the State of Illinois. The petition urged that appellee be incarcerated for a period of time no less than six months for contempt of court. A copy of a Largo, Florida, police report for kidnapping was appended to the petition.

On July 28, 1977, appellee filed an answer to petition for rule to show cause, and affirmative petition for other equitable relief. Appellee's answer and petition, *inter alia*, sought a rule against appellant to show cause why she should not be held in contempt of court for removing the minor child to the State of Florida without the consent of appellee and the court.

On July 28, 1977, appellant filed an answer to emergency petition for custody of minor child and a supplement to petition. Through this answer and petition Judith Drury (1) sought leave to continue residence in the State of Florida with the minor child, (2) urged that appellee be enjoined

from threatening the mother in the future exercise of his visitation rights, and (3) urged that appellee be ordered to show cause why he should not be held in contempt of court for failure to pay child support.

On July 28, 1977, the court entered an order which, *inter alia*, enjoined both parents from removing the child from the jurisdiction of the court and set a hearing for August 8, 1977. Subsequent to this order, Judith Drury, on August 9, 1977, filed a second supplement to petition and on the same day appellee responded by filing answers to supplement to petition and second supplement to petition. Furthermore, on August 9, 1977, appellee filed his supplemental petition for a rule to show cause and for custody of minor child.

On August 8, 1977, the court commenced a hearing to resolve the aforementioned issues, and proceeded to hear the testimony of Judith Drury, Archie Lee Drury III (in chambers), Darren Knuth, Archie Lee Drury, Jr., and Reginald Wolfe.

Judith Drury testified that, at the time of the hearing, she resided in Largo, Florida, with her girlfriend and girlfriend's child. She arrived in Largo in November of 1976 with her two sons and a son's boyfriend. She testified that she never advised appellee that she was departing for Florida.

Upon arriving in Florida, Judith Drury did not communicate with appellee. She testified that she and her family shared an apartment with Judy Mills and she and Judy Mills shared the monthly rental obligation of $175/month. She related that she was unemployed until a month prior to the hearing at which time she became employed as a cocktail waitress. Judy Mills cared for the minor child when his mother was working.

Ms. Drury further testified that she was aware that her departure to Florida occurred without permission of the court and deprived appellee of his right to visit their son. She conceded that no attempt was made to arrange visitation or communication with appellee.

When questioned about her Florida residence, she testified that she presently lives in a large apartment complex, containing a swimming pool and play area. She stated that the minor child attended a nearby church and public school.

She stated that she first saw Mr. Wolfe in January of 1977 after he brought his son to Florida. She stated that Mr. Wolfe resided with her in Florida for six weeks. She noted that Mr. Wolfe was unmarried and that they did not, during said 6 week period, share the same bedroom. She admitted having frequent dinner engagements with Mr. Wolfe.

Ms. Drury further testified that subsequent to her divorce in November of 1973, she commenced living in Arlington Heights, Illinois, and did so until October of 1976 when she moved to Wheeling, Illinois. She stated that in November of 1976 appellee came to her Wheeling address and she

refused to admit him. She stated that he then pulled a gun and said, "Bang, bang, bang you're dead." Following this incident she initiated criminal proceedings against him for aggravated assault and then departed for Florida.

Ms. Drury related that when appellee abducted their son from the apartment complex swimming pool in Florida, the police, the state's attorney and Reginald Wolfe were notified.

Counsel for both parties and a court reporter were present when the court questioned the child in chambers. This procedure has been approved by courts of this State. *In re Ross* (1975), 29 Ill. App. 3d 157, 329 N.E.2d 333; *Oakes v. Oakes* (1964), 45 Ill. App. 2d 387, 195 N.E.2d 840.

The child stated that he lived in Florida and was driven there by Reggie (Reginald Wolfe). He stated that in Florida "Reggie slept with my mommy in her bed." The child also stated that he was now living with his father in Chicago and, at times, also with his grandmother, grandfather and aunt. The child stated that he was happy living with his mother in Florida and that he got along well with his mother and brother Darren, her son by a previous marriage.

Darren Knuth testified that he resides in Florida and has lived there for 9 months. He came to Florida from Chicago in November of 1976. He testified that he knew Reginald Wolfe and that Mr. Wolfe stayed with Darren and Ms. Drury in their apartment. He stated that Mr. Wolfe slept on the couch in the apartment.

Reginald Wolfe testified that he stayed with the Drurys in Florida at the apartment but slept at various times in a truck, on the floor and on a couch. Prior to the departure for Florida he had stayed overnight, on several occasions, at appellant's Wheeling and Arlington Heights, Illinois apartments. He denied that the minor child ever observed him in bed with Ms. Drury. He also stated that Ms. Drury showed the minor child sufficient attention.

Appellee, Archie Lee Drury, Jr., also testified. He stated that he presently lives in Prospect Heights, Illinois with the minor child. He lives in his mother's home. She is unemployed and appellee is self-employed. He stated that an adult is always present when the minor child is home. Appellee stated that he is able to spend most of his days and evenings with the minor child. At home the minor child has his own bedroom and his meals are cooked by appellee and appellee's mother.

Appellee stated that between January and November of 1976, appellant denied his visitation rights. Appellee cautioned her that if she did not take better care of the child, he would attempt to regain custody of the child.

Following the testimony the court denied the motion to vacate the change of custody order. Custody of the child was granted to appellee

and visitation rights were granted to Ms. Drury. It is from this order that appellant, Ms. Drury, appeals.

Change in the custody of the child rests in the sound discretion of the trial court, whose determination in that regard will not be disturbed on review unless contrary to the manifest weight of the evidence. *Katzer v. Katzer* (1978), 61 Ill. App. 3d 299, 378 N.E.2d 316.

■■ The paramount concern at all times in matters of child custody is the best interest of the child. (*Savre v. Savre* (1978), 61 Ill. App. 3d 11, 377 N.E.2d 850.) There is sufficient evidence supporting the trial court's decision that it is in the best interest of the minor child to continue the custodial provisions of the change of custody order.

This evidence specifically relates to the home environment of the minor child in Florida and Illinois. In Florida, the child was cared for by the mother who was working and frequently away from the child. The child often remained in the care of a non-relative. In Florida, the minor resided in an apartment with two families.

On the other hand, in Illinois, the child was cared for by relatives, residing with his father, grandparents and an aunt. The residence is spacious and affords the child his own room. Appellee, being self-employed, is able to devote substantial time to the child.

We note, in concluding, that the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*) is applicable to the case at bar. (Ill. Rev. Stat. 1977, ch. 40, par. 801.) Accordingly, the trial court, in determining custody of the minor child, is to be bound by the dictates of section 602 of the Act. This section provides:

"§602. Best Interest of Child

(a) The court shall determine custody in accordance with the best interest of the child. The court shall consider all relevant factors including:

(1) the wishes of the child's parent or parents as to his custody;

(2) the wishes of the child as to his custodian;

(3) the interaction and interrelationship of the child with his parent or parents, his siblings and any other person who may significantly affect the child's best interest;

(4) the child's adjustment to his home, school and community; and

(5) the mental and physical health of all individuals involved.

(b) The court shall not consider conduct of a present or proposed custodian that does not affect his relationship to the child."

Likewise, the trial court is bound to apply section 610 of the Act. This section provides:

"§610. Modification.

(a) No motion to modify a custody judgment may be made earlier than 2 years after its date, unless the court permits it to be made on the basis of affidavits that there is reason to believe the child's present environment may endanger seriously his physical, mental, moral or emotional health.

(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:

(1) the custodian agrees to the modification;

(2) the child has been integrated into the family of the petitioner with consent of the custodian; or

(3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him.

(c) Attorney fees and costs shall be assessed against a party seeking modification if the court finds that the modification action is vexatious and constitutes harassment."

■■ Although the aforementioned sections of the Marriage and Dissolution of Marriage Act provide specific factors to be considered by the court in arriving at a modification of custody, we believe that specific findings of fact with respect to these sections are not required. (See *Doyle v. Doyle* (1978), 62 Ill. App. 3d 786, 379 N.E.2d 387.) We hasten to note, however, that such specific findings would be of aid to a court of review.

We find that Judith Drury's move to Florida triggered a change of circumstances which adversely affected the minor child's welfare. The decision of the trial court to place the care and custody of the child with appellee is in the best interest of the child and not contrary to the manifest weight of the evidence. Therefore, the decision of the circuit court is affirmed.

Judgment affirmed.

PERLIN and BROWN, JJ., concur.