JOYCE A. CAULKINS, a/k/a Joyce A. Engelkens, Petitioner-Appellant, *v.* RICHARD M. CAULKINS, Respondent-Appellee.

Third District   No. 78-243

Opinion filed February 9, 1979.

Glenn F. Ruud, of Winstein, Kavensky, Wallace & Doughty, of Rock Island, for appellant.

Samuel S. McHard, of Katz, McAndrews, Durkee & Telleen, of Rock Island, for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal from an order of the Circuit Court of Rock Island County modifying a divorce decree, previously entered, by transferring custody of the parties' two minor children from the mother to the father.

On February 3, 1978, the Circuit Court of Rock Island County entered an order modifying the divorce decree of October 2, 1973, to transfer custody of the two minor children of the petitioner, Joyce A. Caulkins (now Joyce A. Engelkens), to respondent, Richard M. Caulkins.

This appeal involves the issue of whether the trial court abused its discretion in granting the change of custody of the two minor children to Richard M. Caulkins and whether there was substantial change in the circumstances of the custodial parent, so that the modification was necessary to serve the best interests of the children, and, incidentally, whether Richard Caulkins sustained his burden of proof for modification of the custodial order.

As we have noted, a divorce decree was entered as between the parties on October 2, 1973, as a result of which each party was to comply

with the terms of the stipulation entered into between the parties which provided for custody of the parties' two minor children, Kelley Lyn, then age 4, and Keith Richard, then age 3. Custody was vested in the petitioner (mother) subject to the father's visitation rights.

The petition for modification was filed by the father on October 12, 1977, asking that the 1973 order be modified to place the custody of the two minor children in the father on the ground that circumstances of the custodial parent had changed negatively so as to affect the children's welfare.

At the hearing held in the cause on January 4, 1978, it was noted that petitioner (mother) had married Virgil Engelkens 2½ years prior to the hearing, when petitioner discovered she was pregnant. Engelkens has had seven heart attacks and currently has a disability. Neither he nor his wife work and Engelkens receives Social Security for his disability.

In September and October of 1977, the mother removed the two minor children from Rock Island County public schools and took them to Florida for a week to look for an apartment. The children were out of school from September 28 until October 19. Petitioner failed to find living quarters in Florida and she moved back to Erie in Whiteside County, taking the Caulkins children with them.

The two minor Caulkins children lived in Erie with their mother, their stepfather, a 2½-year-old half brother and a 1-year-old half sister. The house in which the family lived in Erie had no inside toilet or bathtub and the only running water in the house was in the kitchen. The children washed in the sink and used an outside toilet. The house had no telephone and was heated with a wood and coal burning stove. It was a distance of 2 miles through the woods to the nearest neighbor's house and the children had to walk 1 3/4 to 2 miles to catch the school bus.

Respondent (father) testified that on Christmas 1977, 8-year-old Keith told him that his sister Kelley, age 9 at the time of the hearing, had been molested in Erie by Engelkens' son named Mark, Engelkens' oldest son by a previous marriage. Mark did not live in the Erie house, but had been visiting for the weekend. When asked by respondent (father) about the incident, Kelley cried and confirmed that she had been molested and said that if Engelkens found out about it she would be whipped. Her mother testified that Kelley had also told her about the incident, but that Mark had denied molesting the girl. The mother stated that she didn't know whether to believe Kelley because she had been seeing a psychiatrist and was "still messing her pants." The psychiatrist had advised that Kelley needed a lot of attention. The mother stated that after the alleged molestation, she never left her children alone with Mark. Engelkens testified that he told Mark he would break the boy's neck if he touched Kelley again. Engelkens denied telling Kelley that she would be

whipped if she told anyone about the incident. The mother added that she had never told the father of the children about the incident.

The father of the children testified that in 1977 he noticed welts on Keith. When Keith was asked about the welts, he told his father that he had been whipped by Engelkens for urinating in his pants. Keith added that he was afraid of Engelkens. The stepfather testified that he had whipped the children with his belt perhaps 3 times in 2½ years. He whipped them on one occasion when they started a fire which scorched the floor. Engelkens testified further that he loved the children.

Richard M. Caulkins, the father, is a 30-year-old machine repairman for John Deere Harvester Company. He lives in a four-bedroom house with his wife and 5 children. The house also has a bath, kitchen, living room, full basement and attached garage. The petitioner (mother) testified that before the divorce the respondent (father) whipped Kelley when she wet the bed and that he smacked Kelley's hands when the girl sucked her fingers. The father denied this and stated that his philosophy of discipline was that when a child wets, his parents should leave the child alone and the child will grow out ot if. He added that talking and reasoning with a child does more good than spanking. Caulkins also testified that when he returned the children to their mother in the spring of 1977, the children cried, begging their father to take them back to his home.

Kelley and Keith did not receive very good grades in grade school. The children stated that their visit with their father the previous Christmas and New Year's was fine. They loved their mother and father but said they would rather live with their father. Kelley stated that this was because her father takes good care of them and they get good meals at their father's house. She also admitted that her mother and Engelkens took good care of them and that they got good meals in Erie. Keith said he preferred living with his father because he and his sister only got to see their father once a year. Both children thought they might get better grades going to the school where their father lived. They stated that they got along well with the children who live with their father. Both children said that if they lived with their father, they still would want to visit their mother and stepfather and both testified that their stepfather was not mean to them.

The trial court found that there had been a material and substantial change in the circumstances of Kelley and Keith Caulkins and in the circumstances of their custodians, Joyce and Virgil Engelkens, and that because of these changes in circumstances, modification of the custody order was necessary to serve the best interests of the children. The court also found that the children's environment seriously endangered their physical, mental, moral and emotional health and that the harm likely to be caused by the change in environment was outweighed by its

advantages to the children. The court thereupon ordered that Richard Caulkins be made the custodial parent of the children.

■■ The cause now on consideration is governed by the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 101 *et seq.*). Section 801(a) of the Act states that the Act applies to all proceedings commenced on or after the Act's effective date, which is October 1, 1977. The proceeding with which we are concerned on appeal was instituted on October 12, 1977, with the petition of the father for modification of the custody provisions of the previous divorce decree.

Under the new Illinois Marriage and Dissolution of Marriage Act is a section listing specific criteria which must be met before a trial court may modify a custody judgment. (Ill. Rev. Stat. 1977, ch. 40, par. 610.) The relevant criteria for modification under section 610 are:

> "(b) The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> * * *
>
> (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Subsection (b) of section 610 of the Act is a codification of existing Illinois case law. (See *Nye v. Nye* (1952), 411 Ill. 408; *Wells v. Wells* (2d Dist. 1976), 36 Ill. App. 3d 488, 344 N.E.2d 37; and *Dunning v. Dunning* (2d Dist. 1957), 14 Ill. App. 2d 242, 144 N.E.2d 535.) Even though these cases antedate the new act, they are nevertheless of value in that they impose the same criteria as are now deemed relevant under the new act.

The trial court, in its order of February 3, 1977, found that all the criteria for modification imposed by section 610 of the new Act had been met and ordered custody transferred to the father.

■■ The only basic question before us on appeal is whether the facts in the record support the court's findings. We have noted in *Masterson v. Masterson* (3d Dist. 1976), 40 Ill. App. 3d 201, 202, 351 N.E.2d 888, 889, that it is a general rule, where a change in custody is sought by a noncustodial divorced parent, whether a change in custody should be granted is a matter within the discretion of the trial court and the trial court will be reversed on appeal only when that discretion has been abused. We have also noted that factors such as remarriage and living

quarters, while not controlling, are sufficiently related to a child's welfare, even when involving the parent not then having custody, and those factors can be considered in determining whether there has been a change in circumstances. *Randolph v. Dean* (3d Dist. 1975), 27 Ill. App. 3d 913, 916, 327 N.E.2d 473, 475.

    In the instant case, we have noted that the house in which the mother and her husband live has no toilet, bathtub or phone and its only running water is in the kitchen. An outdoor toilet was used. The house is heated with a coal and wood burning stove and the house is over 2 miles from the nearest neighbor. Various other factors for consideration have been outlined in the recital of facts in this case. As we stated in *Masterson v. Masterson* (3d Dist. 1976), 40 Ill. App. 3d 201, 203, 351 N.E.2d 888, 890:

> "The trial judge had the opportunity to observe and hear the witnesses first hand and he obviously very seriously considered what would serve the best interests and welfare of the minor children."

Both children here stated that they preferred to live with their father. While the preference of the children alone is not sufficient to warrant a change in custody, it is a factor which should receive serious consideration by the court. (*Savre v. Savre* (3d Dist. 1978), 61 Ill. App. 3d 11, 13, 377 N.E.2d 850, 851.) Other evidence indicated that the daughter had been molested by an older Engelkens' son while she was in the mother's custody. The children had been whipped by their stepfather, also, and neither the mother nor the stepfather worked, leaving the children without role models to provide guidance and support toward becoming productive members of society. The only family income came from Social Security disability payments. The trial court's finding that the harm likely to be caused by the change of environment was outweighed by the advantages of such change was not contrary to the manifest weight of the evidence.

    Sections 602 and 610 of the new Illinois Marriage and Dissolution of Marriage Act, on custody, require the court to determine custody in accordance with the best interests of the child. Section 602 requirements are (1) the wishes of the child's parent or parents as to his custody; (2) the wishes of the child as to his custodian; (3) the interaction and interrelationship of the child with his parent or parents, his sisters and brothers and any other person who may significantly affect the child's best interest; (4) the child's adjustment to his home, school and community; and (5) the mental and physical health of all individuals involved. (Ill. Rev. Stat. 1977, ch. 40, par. 602.) Neither party has contended that any of these factors were not considered by the court and the record supports the findings and conclusions of the trial court. The trial court found that the four criteria of section 610 were met in showing that there were (1) a

change in circumstances of the children or custodian since the time of the divorce decree; (2) a modification of the custody order was required to serve the best interests of the children; (3) the children's present environment seriously endangers their physical, mental, moral or emotional health; and (4) the harm likely to be caused by a change of environment will be outweighed by the advantages of such a change.

For the reasons stated, therefore, and in view of the record in this cause, the order of the trial court transferring the custody of the two minor children to the father, Richard M. Caulkins, should be, and is, affirmed.

Affirmed.

STOUDER, P. J., and SCOTT, J., concur.