DELORES APPLEGATE, Plaintiff-Appellee, *v.* DAVID APPLEGATE, Defendant-Appellant.

Fifth District    No. 79-167

Opinion filed January 4, 1980.

David A. Campbell, of Campbell, Furnall, Moore & Jacobsen, of Mt. Vernon, for appellant.

No brief filed for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, David Applegate, appeals from the judgment of the Circuit Court of Marion County denying modification of a 1976 decree of divorce which incorporated the parties' agreement giving custody of their two minor children to plaintiff, Delores Applegate.

The facts established that plaintiff and the children, David, Jr., age 10, and Douglas, age 8, have lived in a farm house belonging to James Decker since the latter part of 1977. Plaintiff testified that she and Decker, whom she plans to marry, have been "going together" for more than two years but denied that he lives with her. According to plaintiff, her daily weekday routine is as follows. She gets up at 4 a.m. and makes breakfast for Decker, who generally arrives between 4 and 4:30 in the morning. At 5:30, she awakens her children, and at approximately 5:45, she and Jim take them to a babysitter. By 6:30 a.m. Jim drives her to her place of employment, Creative Foam, an industrial plant south of Salem where she has worked since August of 1978.

The babysitter testified that the children arrive at her home at about a quarter or 10 minutes before 6 in the morning. She then puts the children to bed until 7:30, at which time she calls them for breakfast. After the meal, she sends them to school between 8 and 8:15.

After school lets out at 3:15 to 3:30, the children return to the babysitter's home, which is only two blocks from the school; however, if David, Jr., has basketball practice, the children do not arrive until 4. The children have a snack and watch television until their mother and Decker pick them up at 5:30, following work.

The mother testified that she makes dinner for Decker and her children and that she usually puts her children to bed at 7:30 p.m.

According to the mother, Decker usually leaves at 8:30 to 9 p.m.; however, she admitted that there were times when Decker stayed for the evening. On such occasions, she claimed that they did not share a bed.

Both children testified *in camera* and stated that Decker stays over night at the farm house "most of the time." They indicated that they do not get along with Decker and that he favors his own two sons, Mark and Brad Decker, over them. According to David, Jr.: "He [Decker] threatens us and acts like he is going to whip us; we are scared." At times when Decker engages in this type of activity, plaintiff "just lets him go" and does not "stick up" for them. David, Jr., indicated that they get along with Decker's younger child, Brad, but that the older son, Mark, "is always fighting us and beating us up." Douglas stated that Mark and Brad, who visit on various weekends, "treat us like we are nothing. They just treat us like we are animals."

David, Jr., testified that he gets along with his mother "some of the time" but indicated that he often argues with her. Both David and Douglas indicated that plaintiff has at times thrown them "up against the wall." The children stated that they get along "real well" with their father and that he never mistreats them. Their father takes them to various places, such as the zoo and the amusement park, whereas their mother seldom takes them anywhere. The children said that they have few friends at the farm but have many friends to play with at their father's home. The father's home is clean in contrast to the farm house, where clothes and paper are thrown about.

They also testified that they like their father's wife, Karen, and feel very comfortable with her. Both children would prefer to live with their father because according to David, Jr., "he treats us better" and according to Douglas, "He loves us more than mom." The children also stated that their father had not attempted to influence their testimony but that their mother had.

Defendant, David, Sr., testified that he and his wife live in a three bedroom home with their one-year-old baby. He plans to add another bedroom to the home because he and his wife are expecting another child. David, Sr., is a partner in a trucking firm and works from approximately 7 or 7:30 a.m. to 4 in the afternoon. During lunch hour, he returns home to eat with his wife and child. During visitation periods, he and his wife have taken the children to the zoo and amusement park. The father also plays ball with the children and takes them swimming and hunting. He added that his wife, who does not work outside the home, gets along well with his two sons.

David's wife, Karen, testified that the children are very affectionate with their father and get along with him "fantastically." She stated that she feels strongly towards the children and cares for them as if they were

her own. She indicated that she and her husband take the children skating, bowling and camping and that she reads to them. According to Karen, the children are affectionate with her. She states: "They kind of hug me and they sit on my lap and they let me know that they appreciate I am there and that I do things for them."

Both defendant and defendant's father testified that Decker appears to live with plaintiff. At various times, defendant and his father have each driven by the home between 2 and 3 a.m. and have seen Decker's car and pickup truck parked in front.

On appeal, defendant contends that the trial court abused its discretion in denying his petition for modification of the 1976 custody judgment in which petition defendant sought permanent custody of the parties' two minor children. Under subsection (b) of section 610 of the new Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 610(b)):

> "The court shall not modify a prior custody judgment unless it finds, upon the basis of facts that have arisen since the prior judgment or that were unknown to the court at the time of entry of the prior judgment, that a change has occurred in the circumstances of the child or his custodian and that the modification is necessary to serve the best interest of the child. In applying these standards the court shall retain the custodian appointed pursuant to the prior judgment unless:
>
> * * *
>
> (3) the child's present environment endangers seriously his physical, mental, moral or emotional health and the harm likely to be caused by a change of environment is outweighed by its advantages to him."

Initially, we note that defendant, on one previous occasion, had filed in October 1977 a petition to modify the custody order of the 1976 divorce decree. On December 13, 1977, the trial court denied the petition. Thereafter, on October 31, 1978, defendant filed the present petition for modification of the custody order which the trial court again denied. Therefore, for purposes of this appeal, the "change of circumstances" set forth in section 610 of the Act that would justify modification of custody must have occurred since the entry of the December 13, 1977, order, and not since the date of the decree of divorce.

At the hearing on the present petition, defendant, on whom the burden of proof rests (see *Thomas v. Thomas* (1978), 56 Ill. App. 3d 806, 372 N.E.2d 679), has brought attention to numerous circumstances occurring since the prior order compelling the modification of the original custody order. While, in cases of this kind, the trial court has broad

discretion in deciding matters of change of custody, that discretion is not unlimited. It is therefore the duty of the reviewing court to reverse a decision, as in the present case, which is contrary to the manifest weight of the evidence. *Soldner v. Soldner* (1979), 69 Ill. App. 3d 97, 386 N.E.2d 1153.

The evidence established that Decker, who either lives in plaintiff's residence or spends most of his time there, mistreated and abused the children and favored his own two sons at the expense of plaintiff's. Plaintiff refused to intervene when Decker engaged in these hostile acts, demonstrating either her inability to care for her children properly or her lack of concern. Decker's oldest son, Mark, exhibited hostility towards David, Jr., and Douglas and made it uncomfortable for them to remain at the farm. The evidence also suggested that plaintiff, with her recent employment at Creative Foam, had insufficient time to care for her children. Plaintiff awakens her children early in the morning, rushes them over to the babysitter's 15 minutes later without providing them breakfast, and picks them up at the babysitter's early in the evening. The children then have little opportunity to spend time with their mother as they must go to bed early so that they can arise at 5:30 in the morning. The children, therefore, are constantly shuffled back and forth between home and the babysitter's and apparently spend more leisure time with the babysitter than they do with their mother.

The evidence of the mother's insufficient time to devote to her children, her inability to care for them or her lack of concern, the abusive treatment of Decker and his son, Mark, the hostile environment in the home and the constant shuffling of the children to the babysitter's demonstrates that the children's present environment endangers seriously their physical, mental and emotional health. Compare *In re Marriage of Farris* (1979), 69 Ill. App. 3d 1042, 388 N.E.2d 232; *Canham v. Saisi.*(1979), 65 Ill. App. 3d 686, 382 N.E.2d 654; *Drury v. Drury* (1978), 65 Ill. App. 3d 290, 382 N.E.2d 608.

■■ Furthermore, the trial court completely ignored the testimony of the children that they preferred to live with their father. "While the preference of the children alone is not sufficient to warrant a change in custody, it is a factor which should receive serious consideration by the court." (*Caulkins v. Caulkins* (1979), 68 Ill. App. 3d 284, 289, 385 N.E.2d 1117, 1120.) This preference is especially pertinent where the children have expressed their unhappiness living with their mother and where their desire to live with their father was based upon reasons related to their welfare and best interests. See *Canham v. Saisi.*

■■ Lastly, the evidence demonstrated that any harm caused by a change of the children's environment will be outweighed by the advantages to

them. At the father's home, it appears that the children will be entering a friendly and loving environment where they will receive proper treatment and attention. They will have the opportunity to spend time with their father and stepmother, who have demonstrated their willingness and desire to care for David, Jr., and Douglas. The children will also be near to their friends unlike their present situation where friendships were lacking. Although there is always some hardship to the children and parents in modifying custodial arrangements, we believe the change in the present situation is clearly and unquestionably in the children's best interests.

■■ We are cognizant of the recent supreme court opinion of *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, in which the court held that the "open and continuing cohabitation of the custodial parent with a member of the opposite sex" endangered the children's moral health and justified a change in custody. As the trial court in the present case made no explicit findings as required under the new act (see *In re Custody of Harne* (1979), 77 Ill. 2d 414, 396 N.E.2d 499), we do not know what weight or significance it attached to the alleged living arrangement of plaintiff and Decker; however, we need not decide whether plaintiff and Decker engaged in the "open and continuing cohabitation" discussed in *Jarrett* and consequently whether the children's moral health was endangered as we feel the evidence supports the conclusion that the children were subjected to more tangible harm.

For the reasons stated, we reverse the judgment of the Circuit Court of Marion County and remand the cause for entry of a judgment transferring custody of the two minor children to the father with allowance for reasonable visitation rights in the mother.

Reversed and remanded.

KASSERMAN and SPOMER, JJ., concur.