*In re* MARRIAGE OF THOMAS F. STONE, JR., Petitioner-Appellee, and VIRGINIA L. STONE, n/k/a Virginia L. Husty, Respondent-Appellant).

First District (4th Division)   No. 86—3146

Opinion filed December 17, 1987.

Bernard Hammer, Ltd., of Chicago, for appellant.

Thomas F. Stone, of Chicago, for appellee.

JUSTICE LINN delivered the opinion of the court:

This action concerns the custody determination of the child of Thomas and Virginia Stone. The trial court awarded temporary and permanent custody of the child to the father, Thomas. Virginia appeals, contending that: (1) her constitutional rights were curtailed when the trial court entered the temporary custody order without an evidentiary hearing; (2) the custody determination is against the manifest weight of the evidence; (3) the trial court committed cumulative, reversible errors; and (4) the trial court erred in refusing to reconsider its custody determination in light of matters brought to its attention on timely motion following judgment.

We affirm.

BACKGROUND

The parties were married in April 1981. Their daughter, Jennifer, was born in December of that year. Virginia already had a daughter, Pamela, who was 1½ years old when Virginia married Thomas.

On June 1, 1984, Virginia left her husband and moved to Tampa, Florida, taking the two girls with her. She did not advise him of her whereabouts but wrote him a letter two weeks later in which she said she would return Jennifer because she could not afford a day care center. She later changed her mind.

In November of 1984 Thomas located Virginia through a private detective and served divorce papers on her. In December 1984, Thomas flew to Tampa and picked up Jennifer, returning with her to Chicago. There was no court order in effect at that time concerning custody.

On January 21, 1985, Virginia, by her attorney, presented an emergency motion for custody of Jennifer. The trial court declined to enter an order on that date because Virginia was in Florida and could

not testify. Her attorney withdrew the motion. In March 1985 the emergency motion was renewed but the court found there to be no emergency and ordered mediation. By agreement of the parties the court entered a temporary order allowing Jennifer to be with her mother for three months, from March to June. In June, Thomas was to have custody for three months. The matter was continued to September 18, 1985.

On September 18, 1985, Virginia's attorney admitted that there was no emergency. Accordingly, the emergency motion judge removed the case from his call and sent it to custody mediation to be called up in the normal course of events. Since the temporary, agreed custody order expired on September 18, the court ruled that the temporary custody of Jennifer should remain with Thomas, without prejudice, since he and the child were in Illinois and Virginia lived in Florida. Virginia's attorney did not object to this procedure or request an evidentiary hearing on temporary custody before the emergency motion judge.

The trial for the custody of Jennifer took place beginning April 8, 1986. Both parties testified as to the care they had given to Jennifer and the good relationship they enjoyed with her.

Virginia accused Thomas of slighting Pamela, her other daughter, in favor of Jennifer. Virginia testified that Thomas had bouts of depression and withdrawal. She said he frequently drank liquor and smoked marijuana. As a result of her husband's behavior, Virginia decided to leave him.

Virginia testified that she is capable of caring for both children. She moved to Tampa, where she found employment. In August 1984 she moved to a studio apartment. She met her boyfriend, Henry Husty, in August 1984. On occasion, he stayed overnight. During those evenings the two girls, ages 2 and 4, slept on the other side of a room divider.

At the time of the trial Virginia was living in a three-bedroom house owned by Mr. Husty, to whom she was contemplating marriage. She testified that she has flexible working hours and has enrolled Pamela in the YMCA latch-key program, where she is under adult supervision until Virginia picks her up.

Virginia testified as to Pamela's good health and personal hygiene. She does well in school and is close to her mother. Also, she spends time with Mr. Husty's mother, referred to as "Grandma Husty." Pamela misses her sister, Jennifer.

Thomas testified that he is in good health and takes no medications. He no longer smokes marijuana. He takes Jennifer to Chil-

dren's Learning World in the mornings before he goes to work and picks her up in the evenings. Thomas has attended parent-teacher conferences at the school. He testified as to Jennifer's interests and the sports activities that they share, such as baseball games.

Thomas testified that he loves Pamela and would never abuse her. Virginia refuses to let him see Pamela. According to the psychological evaluation of Pamela, she should be allowed to establish communications with Thomas, whom she views as her father.

The caseworker for the Cook County Department of Supportive Services concluded that Thomas is a loving father who has provided a highly suitable environment for Jennifer and has the financial means to continue providing for her material needs. The caseworker's report stated that Jennifer was born and raised in Illinois and that she should continue living in the marital home, for her stability.

A report from the Florida Department of Health and Rehabilitative Services cited Virginia's good care for her daughters and recommended that Virginia be Jennifer's custodial parent.

The court-appointed guardian *ad litem* recommended that custody be vested in Thomas, finding that, "on balance," he could not believe that "her stability, her serenity, her peace of mind, and her adaption to her peers and her neighborhood would be improved by returning her to Tampa."

Additional witnesses testified, each in favor of the party calling them.

The trial court considered the standards listed in section 602 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 602), and awarded custody to Thomas. The court expressly noted that the decision was difficult because of the resulting separation of the siblings.

Virginia filed a motion to reconsider the judgment. She submitted evidence that she had married Henry Husty on June 21, 1986. She also offered photographic evidence of her residence in Tampa, Florida. The trial court denied the motion, citing among other things a concern over Virginia's stability.

Opinion

I

■ Virginia initially contends that she was denied due process when the trial court would not allow a hearing on her emergency motion for custody and then entered a temporary custody order months later in favor of Thomas without an evidentiary hearing.

At the time she filed her initial "emergency" motion, in January of 1985, Thomas had physical possession of the child and Virginia was in Florida. The divorce action had been filed but there were no orders in effect. The trial court stated that it could not have a hearing on Virginia's motion unless she was in court to testify in support of her allegations and be available for cross-examination. This, she claims, was erroneous.

We cannot agree. The record reveals that Virginia's motion was unverified and unsupported by any evidentiary matter. It was signed by her attorney. There is no indication that her attorney could have proceeded to hearing and, in fact, he withdrew the motion, thereby waiving this argument.

When the parties were next in court, March 4, 1985, they entered an agreed order setting out a six-month schedule for Jennifer's custody, with each parent to have her for three months in the respective parent's residence. The parties were also to undergo mediation during this time. There is no suggestion that Virginia requested or even wanted an evidentiary hearing on her motion in March, although she was present in court with her attorney. By this time, Thomas had his own motion for temporary custody on file, and his was verified. Both motions were continued to September 18, 1985.

On September 18, 1985, the emergency motion judge questioned why the matter was on his call, since the parties admitted that there was no emergency, and sent the cause to the custody mediation call. As a result, Virginia argues, her rights were diluted because of the time that had elapsed since her original motion in January. She also challenges the order which left custody in Thomas.

We find Virginia's position to be tenuous. She did not object to any of the interim orders, including the one entered September 18 in which temporary custody was awarded to Thomas. She was not arbitrarily precluded from presenting her motion; her own acquiescence, as much as anything else, is responsible for the delays that she now challenges as prejudicial. Moreover, the court made the interlocutory custody ruling without prejudice to Virginia's right to contest custody or proceed with her proofs at trial. The emergency motion judge also pointed out that she could present her nonemergency motion to the regular motion judge. For all of these reasons, we find no due process violation.

■ There is, additionally, a basic point of law that Virginia's belated objection ignores: Temporary custody orders are provisional in nature and are superseded by the final decree, which disposes of the cause on the merits. (*Maroney v. Maroney* (1969), 109 Ill. App. 2d

162, 249 N.E.2d 871.) The September 18, 1985, order did not dispose of any rights and was entered expressly without prejudice. It ceased to be effective upon entry of the decree that determined the rights and obligations of the parties. She did not appeal from the order or make any attempt to obtain temporary custody after the September 18 order was entered.

## II

■■ ■ Virginia next challenges the trial court's custody determination as being against the manifest weight of the evidence. The thrust of this argument is that the court improperly considered Virginia's past conduct and past circumstances in denying her custody.

Our search of the record does not disclose support for this contention. On the contrary, the court expressed its disregard of her past circumstances that did not affect Jennifer's present welfare.

The trial court was concerned, however, with the stability of Jennifer's home environment, an especially important consideration for the well-being of the child. (See *In re Marriage of Rizzo* (1981), 95 Ill. App. 3d 636, 646, 420 N.E.2d 555, 563.) Evidence that Virginia left the marital home with the children and without notice to her husband is relevant to this determination, as is evidence of her living quarters in Florida and the fact that she moved three times. See *Mason v. Mason* (1977), 49 Ill. App. 3d 775, 364 N.E.2d 705; *Drury v. Drury* (1978), 65 Ill. App. 3d 290, 382 N.E.2d 608.

Virginia charges that the court made false assumptions and gave insufficient weight to her feeling that Thomas was mistreating her other daughter, Pamela. Neither assertion is borne out by the record. We find ample evidence that Thomas loves Pamela and wishes to see her. Moreover, it appears that she considers him her father.

The guardian *ad litem* recommended that Thomas be given Jennifer's custody, as did the caseworker from the Cook County Department of Supportive Services.

The trial court assesses the credibility of the witnesses and evaluates the evidence in determining which of two loving parents can provide the best, most stable environment for the children. (See *In re Marriage of Ramer* (1980), 84 Ill. App. 3d 213, 405 N.E.2d 401.) The trial court is vested with broad discretion in custody matters and absent a palpably erroneous judgment, contrary to the manifest weight of the evidence, the trial court's judgment should not be reversed. (*E.g., In re Marriage of Poston* (1979), 77 Ill. App. 3d 689, 396 N.E.2d 576.) We find no abuse of discretion in this case.

### III

Virginia next raises four points of alleged reversible error. First, she claims that the trial court improperly considered her moving to Florida as a wrongful act. This, she states, impinges on her constitutional right to travel and live wherever she desires.

This argument borders on the frivolous. The issue before the court was not whether she had a right to move out of Illinois but whether her uprooting the children from their home and father without notice and moving hundreds of miles away was relevant to the best interests of the child determination. Whatever problems she was having with Thomas, her "solution" does not appear to be a well-thought-out plan designed to minimize the potential emotional harm to the children.

A second, rather duplicative argument Virginia makes is that the trial court improperly considered her choice of residence in Florida as taking the child "out of the jurisdiction of the [Illinois] court" when she had been living in Florida for five months before Thomas filed in Illinois. She uses this statement to suggest that the court had determined that her leaving was a wrongful attempt to avoid the Illinois court's jurisdiction.

Virginia admitted that she sought legal advice after arriving in Florida and was told that she could file for divorce there after six months. She admitted that she did not reveal her whereabouts to Thomas and that she tried to prevent him from seeing Jennifer. From this evidence the trial court could have inferred that she was attempting to establish residency in Florida to file for divorce there. While there is nothing illegal about that, the fact remains that Illinois had been the State of residency for the parties and the children for years, until her unilateral actions altered the situation. The Uniform Child Custody Jurisdiction Act (Ill. Rev. Stat. 1985, ch. 40, par. 2101 *et seq.*), while not directly in issue here, is designed to ensure that custody litigation takes place in the State in which the child and his family have the closest connection and to deter the unilateral removals of children for the purpose of obtaining custody awards. (Ill. Rev. Stat. 1985, ch. 40, pars. 2102(3), (5).) A court has jurisdiction if it is the home State or if the child has lived there six months prior to the filing of an action for custody. (Ill. Rev. Stat. 1985, ch. 40, par. 2104(a).) At the time Thomas filed in Illinois, Virginia had not lived in Florida for the requisite six months and presumably could not have maintained an action in that State anyway. Hence, we fail to see how the trial court's comment as to the court's jurisdiction is prejudicial. Certainly, it does not constitute reversible error.

Virginia next contends that the trial court improperly considered her living arrangements after her separation from her husband as a factor in the custody determination.

■ Parental conduct that does not adversely affect the child is not to be considered in the custody determination. (*E.g., In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88; *In re Custody of Ehr* (1979), 77 Ill. App. 3d 540, 396 N.E.2d 87.) Hence, evidence of a mother's "immoral intimacy" may be deemed insignificant if there is no indication that the child's welfare in endangered. (*In re Marriage of Olson* (1981), 98 Ill. App. 3d 316, 424 N.E.2d 386. *Cf. Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421.) Although it is improper for a court to *presume* harm to a child based on the parent's allegedly immoral conduct (*In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88), evidence bearing on the stability of the child's environment is obviously relevant.

In the pending case, the court did not make its determination in a vacuum. Virginia's living arrangements, the three moves she made in a year, and her relationship with Mr. Husty were not totally irrelevant to this important determination of stability. The court did take notice of her change in marital status and improved living quarters upon Virginia's motion for reconsideration. Furthermore, the court advised Virginia that custody rulings are never completely "final" in that she could petition the court in the future for a change if circumstances warranted it. However, the court was not persuaded that the mere fact of her marriage and improved living arrangements was sufficient to overturn the original custody judgment.

We do not find that the trial court abused its discretion or failed to properly evaluate the evidence. Its job was to weigh all the evidence bearing on the child's best interests to determine which parent would probably provide the better environment for Jennifer. Such decisions, as the court noted, are extremely difficult, particularly when the separation of siblings is involved. It is also evident that both parents love the child and likely would do a creditable job of raising her. Nevertheless, neutral witnesses, including the guardian *ad litem*, recommended that Jennifer's custody be placed in her father. Then, too, the court provided liberal visitation in the mother. We do not find palpable error in the court's decision.

■ As for the final point of alleged error, the separation of Jennifer and Pamela, we note only that the trial court was well aware of the preference for keeping siblings together. The cases cited in support of this proposition are valid authority that nevertheless do not control the specific facts of any case. As the court noted in the recent

decision of *In re Marriage of Bailey* (1985), 130 Ill. App. 3d 158, 474 N.E.2d 394, 396, the award of siblings to different parents is sometimes warranted. In *Bailey* the trial court found that one parent might frustrate the other's contact with the children if he were to retain custody of all the children. The court believed that the best way to ensure continued contact between the children and both parents was through the division of custody.

In the pending case, Virginia initially wanted to prevent Thomas from seeing Jennifer. At trial she testified that she knew it was important for the child to have a good relationship with both parents. She apparently has not, however, allowed Thomas to communicate with Pamela, who is not his biological child but who views him as her father. The trial court could properly believe that the separation of the two girls' custody was appropriate to foster improved contact between the parents and children. Then, too, the fact that Pamela's custody was already with Virginia does not mean that Jennifer's custody should automatically follow simply to avoid separating the two girls. Finally, because of the liberal visitation, Jennifer likely will be able to maintain close ties with Pamela even when they are apart.

## IV

■ The last issue that Virginia raises is the propriety of the court's denial of her motion to reconsider. We have discussed above various points of error, which were also raised in the motion to reconsider, and concluded that the court did not commit reversible error in the original judgment. The main additional matter that Virginia raised in her post-judgment motion was the fact of her remarriage. Now she argues that the court should have granted her a rehearing based on that event alone, citing *In re Marriage of Combs* (1979), 78 Ill. App. 3d 533, 397 N.E.2d 255.

We cannot agree. In *Combs* the court did find that the trial court should reconsider the entire custody question, in part because of the remarriage of the noncustodial party (the mother). However, in that case the trial judge commented extensively on her adultery and closed off consideration of other evidence by summarily ordering custody to the father. The ruling was clearly based solely on the mother's sexual conduct rather than the best interests of the children.

That is not the case here. Our review of the record reveals that there was a thorough trial with several witnesses and substantial exhibits. There is no evidence that the court based its custody determination on the fact that Mr. Husty occasionally spent the night with Virginia and the children before they were married. Since the court

expressly acknowledged her remarriage we cannot conclude that the court *refused* to consider this evidence, but only that the court was not persuaded to change its determination based on that one fact. Ordering a rehearing of custody in this case, therefore, is neither necessary nor desirable.

For the foregoing reasons, we affirm the custody determination of the trial court.

Affirmed.

McMORROW, P.J., and JOHNSON, J., concur.