In re MARRIAGE OF RANDY P. SYKES, Petitioner-Appellee, and DAWN A. SYKES, Respondent-Appellant.

Fourth District   No. 4—91—0929

Opinion filed June 29, 1992.

Jay M. Watts, of Decatur, for appellant.

Erickson, Davis, Murphy, Griffith & Walsh, Ltd., of Decatur, for appellee.

JUSTICE LUND delivered the opinion of the court:

Respondent Dawn Sykes appeals from an order of the Macon County circuit court denying her petition for sanctions under Supreme Court Rule 137 (134 Ill. 2d R. 137) against petitioner Randy Sykes and his attorneys. The sanctions were requested after the court's denial of Randy's petition for modification of custody of the parties' daughter, Courtney.

Dawn and Randy were divorced in 1985. Dawn was awarded custody of Courtney. The parties' property settlement agreement provided that Randy would have visitation on alternate weekends, two weeks in the summer, alternate holidays, Father's Day, and his birthday. Randy remarried in July 1990. In January 1991, he filed a petition asking that the custody order be modified to grant custody to him. In response to Dawn's demand, Randy filed a bill of particulars detailing changes in Courtney and Dawn's circumstances which he believed supported a modification of custody. He alleged that (1) Dawn had changed residences 13 times since the divorce; (2) Dawn had made unreasonable and arbitrary changes in his visitation schedule; (3) Dawn had left Courtney without proper supervision; (4) Dawn and Courtney had resided with a man to whom Dawn was not married; (5) Dawn and Courtney had taken numerous overnight trips with a man to whom Dawn was not married; (6) Courtney had resided in Randy's home between 12 and 15 nights each month; (7) Dawn had not given reasonable time and attention to Courtney's needs; (8) Dawn had allowed Courtney to be present in taverns until late in the evening; (9) Dawn had not secured adequate dental care for Courtney; (10) the environment in Randy's home was more suitable for Courtney than that in Dawn's home; and (11) Dawn had not maintained a stable life for herself and Courtney. On June 13, 1991, a hearing was held on Randy's petition. A brief summary of relevant testimony follows.

Dawn testified that the parties had informally made some changes in Randy's visitation. For some time prior to the filing of Randy's petition, he also had Courtney on Wednesday and Thursday nights. In addition, Dawn took Courtney to Randy's house on weekday mornings, and Randy would give her breakfast and then take her to school. She admitted she cut back on the extra visitation after Randy filed his petition to modify. She also admitted she had moved a number of times since the divorce, although she denied she had moved 13 times

during that period. She admitted she had lived with boyfriend Jay Watts for approximately eight or nine months. During this time, she and Courtney occasionally had to leave Watts' residence on weekends so that he could have his children visit. She moved out of the Watts residence in June 1990. Dawn also testified to an incident with Watts sometime before she moved into his residence, where he grabbed her arm and she called the police. She stated Courtney was outside his residence when this occurred. She testified Watts had stayed overnight at her residence two or three times when Courtney was there. If Watts' car was parked at her residence, it would be reasonable to assume he was there. On a few occasions she, Courtney, and Watts had taken overnight trips outside Decatur. There may have been one occasion when she had open beer in her car while Courtney was present. She interprets "open beer" as meaning a broken six-pack, not where a beer can is open.

Dawn also testified that she had sometimes attended softball games when Watts had played on the Decatur Bar Association team. Courtney had also attended these games. After a game, she and Courtney sometimes accompanied Watts and other members of his team to restaurants where liquor was served. They usually arrived around 8 or 9 p.m. and stayed an hour or two. Several other lawyers on the team also took their children.

Dawn testified that Courtney is an "A" student. She has received academic achievement and recognition awards. Dawn admitted to an incident where she shouted obscenities at Randy's wife Karen in April 1991. She was upset because of something Randy had done.

Randy testified that Dawn arbitrarily changed his visitation schedule at different times over the last few years. She would call, yell at him, and tell him he could not have Courtney. A few hours later she would call back and change her mind. Over the last three years, Courtney spent between 12 and 15 nights per month at his home. Since he filed his petition to modify, he no longer has Courtney in the mornings but meets her at school for a few minutes before class starts. He helps her with her homework. Several times, when she arrived at his house in the morning before school, she was tired and had not finished her homework the night before. At times she fell asleep at the breakfast table. This never happened when she spent the night at his house—she has a regular bedtime there of 9 p.m. On several occasions from October 1990 to January 1991, he drove by Dawn's apartment late at night or early in the morning to see if Watts' car was parked there. For approximately five months prior to their marriage, his wife Karen lived with him at his home. He testified to the

things he, Karen, and Courtney do together and the interest he maintains in Courtney's school and extracurricular activities. He also testified that Courtney was present in his house overnight when Karen spent nights there. He stated he saw nothing wrong with this. His concern with Dawn's living situation with Watts was that Courtney had to leave on weekends because she was not supposed to be there when Watts' children came to visit him. Prior to Karen's moving in, he had gone on overnight trips with Courtney and had taken other women with them.

Randy testified he took Courtney to the dentist. Dawn had missed Courtney's appointment and Courtney was complaining about two of her teeth. She had two cavities filled.

An *in camera* examination of Courtney was conducted. She said she preferred to continue living with her mother, but she would like to resume the prior visitation with her father. She did not see her mother's altercation with Watts, but she did hear it. She was in the house at the time.

Karen Sykes testified as to her relationship with Courtney. She and Courtney get along fine and they have had no problems. From February 1989 until she moved in with Randy in April 1990, she estimated she stayed overnight at Randy's house approximately 50 times. Courtney was present approximately one third of that time.

At the conclusion of the hearing, the court took the matter under advisement. A written judgment order was entered on June 14, 1991, denying Randy's petition. The court found that (1) both parties had in the past lived with a person to whom they were not married; (2) Dawn's sexual conduct had not affected Courtney; (3) Dawn had taken Courtney to family restaurants that serve liquor but this conduct was not immoral; (4) Courtney does well in school and in her extracurricular activities; (5) Courtney has always lived in suitable places; (6) Dawn has been employed at the same job for 13 years; and (7) the court had considered Courtney's preference. The court further ordered each party to pay his and her own attorney fees.

Dawn filed a petition asking for imposition of sanctions under Rule 137. Her petition alleged the parties' depositions and evidence at the June 13, 1991, hearing showed virtually all allegations made in Randy's petition for modification and his response to her demand for a bill of particulars to be untrue and made without adequate investigation. She further alleged that even if Randy's allegations had been proved to be true, they would not have warranted a change in custody under existing law absent proof that Courtney had somehow been

harmed. The petition asked for attorney fees and costs expended by Dawn in the custody proceeding and the sanctions proceeding.

A hearing on this petition was held November 8, 1991, with Dawn as the only witness. She testified as to conversations she had with Randy after the filing of his petition for modification. She stated Randy thought he was paying too much child support. He told her he wanted to be able to say he had custody of Courtney, but that nothing would change as far as Courtney's living arrangements were concerned. He would not pay support and neither would Dawn. She testified Randy told her he knew his chances were "slim to none" of winning custody. After denial of Randy's petition, she had several conversations with him. She stated Randy told her he would not take Courtney any extra days unless she agreed he would not have to pay child support for those days. He also commented to her that at least he had put her through six months of hell, even though he did not win. At the conclusion of this hearing, the trial judge denied the petition. He found that neither party came to court with clean hands and that Randy's petition for modification was filed in good faith. He also strongly implied that Dawn had invited the modification petition by living with her boyfriend. Dawn now appeals from this order.

Dawn contends on appeal that the trial court erred in failing to impose sanctions on Randy and his attorneys pursuant to Rule 137. We disagree and affirm.

■ Rule 137 (134 Ill. 2d R. 137) provides, in pertinent part, as follows:

> "Every pleading, motion and other paper of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign his pleading, motion, or other paper and state his address. *** The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *** If a pleading, motion, or other paper is signed in violation of this rule, *the court, upon motion or upon its own initiative, may impose* upon the person who signed it, a represented party, or both, an appropriate sanction, which may in-

clude an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee." (Emphasis added.)

Rule 137 preempts all matters sought to be covered by section 2—611 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—611). In that section, the court was required to impose a sanction if it found a violation of the section. As emphasized above, we note that Rule 137 grants the court discretion to impose a sanction, even if a violation is found.

■ Rule 137 is penal in nature, and its provisions must be strictly construed. (*Lewy v. Koeckritz International, Inc.* (1991), 211 Ill. App. 3d 330, 334, 570 N.E.2d 361, 365.) The purpose of Rule 137, like that of its predecessor (section 2—611 of the Code), is to penalize litigants who plead frivolous or false matters or bring suit without any basis in law. (*In re Estate of Wernick* (1989), 127 Ill. 2d 61, 77, 535 N.E.2d 876, 883.) It must be remembered that it is not the purpose of Rule 137 to penalize litigants and their attorneys simply because they have been unsuccessful in the litigation. (*Couri v. Korn* (1990), 202 Ill. App. 3d 848, 857, 560 N.E.2d 379, 386.) The test to be utilized in determining whether a violation has occurred is an objective standard of what was reasonable under the circumstances at the time the assertions were made. It is inappropriate to use the benefit of hindsight in judging alleged violations of the rule. (*Lewy*, 211 Ill. App. 3d at 334, 570 N.E.2d at 364-65.) Imposition of sanctions under Rule 137 is left to the discretion of the trial court. Thus, on review, the trial court's decision will not be disturbed absent an abuse of this discretion. (*In re Estate of Smith* (1990), 201 Ill. App. 3d 1005, 1009, 559 N.E.2d 571, 573, *appeal denied* (1991), 136 Ill. 2d 544, 567 N.E.2d 331.) An abuse of discretion will be found only where a trial court has made a decision no reasonable person could make. Where reasonable people could differ as to the propriety of the trial court's action, there has been no abuse of discretion. *Lewy*, 211 Ill. App. 3d at 334-35, 570 N.E.2d at 365.

Dawn contends that most of the allegations of fact in Randy's bill of particulars were untrue or had no bearing upon the issue of modification of Courtney's custody. She also argues that Randy was required to allege and prove some harm or detriment to Courtney and that he failed to do so. She believes these factors are dispositive of the question of whether Randy and his attorneys should have been sanctioned under Rule 137. She says the speed with which the trial court rendered its decision denying Randy's petition for modification

is indicative of the petition's lack of merit. She believes Randy's motives in filing his petition were to harass her or control her life, and not to gain custody of Courtney.

We disagree with Dawn that most of the allegations made by Randy were untrue. We also disagree that the trial court could not have properly considered them in making its determination as to whether custody should be modified.

While the evidence may not have established that Dawn actually moved 13 times in the years since the divorce, she did admit to having at least six different residences during that period. Randy claims the evidence showed nine residences. We know of no rule that would require the mathematical precision urged here by Dawn. The purpose of Rule 137 is not served by engaging in such nitpicking. This evidence appears to have been introduced to show Dawn's instability. Stability of the child's environment is an important factor for the court to consider in custody modification cases. *In re Marriage of Stone* (1987), 164 Ill. App. 3d 1046, 1051, 518 N.E.2d 402, 406.

There was some evidence that Dawn may have made some arbitrary changes in Randy's visitation from time to time. She denied this, and Randy asserted she had done so. In any event, there was hardly a complete lack of evidence on this point.

Dawn did admit to having resided with Watts for a period of approximately nine months. Although she was not residing with him at the time of the hearing, this was a proper factor for the court to consider at the hearing on modification. Although Dawn says in her brief that she is now married to Watts, that fact is not shown by the record and we do not consider it significant since, if the marriage did occur, it was after the hearing on the modification petition. Our supreme court's pronouncements on the question of what significance is to be given to a custodian's living with a person of the opposite sex to whom he or she is not married have been somewhat inconsistent. (Compare *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, with *In re Marriage of Thompson* (1983), 96 Ill. 2d 67, 449 N.E.2d 88.) Moreover, even though Dawn points to the fact that she had not lived with Watts for several months prior to the filing of Randy's petition, she admitted he did spend some nights with her at her apartment when Courtney was present. It was proper for the court to hear such evidence. Dawn complains of what she believes to be Randy's hypocrisy in criticizing her for living with a man not her husband, when he lived with his wife Karen prior to their marriage. We fail to see what bearing this has on the truth of Randy's allegations regarding Dawn's conduct. Dawn is mistaken if she is suggesting that Randy

would not have been able to obtain custody of Courtney solely because of his past misconduct. Evidence of past misconduct will not disqualify a parent from obtaining custody, if the evidence shows the misconduct has ceased and is unlikely to recur. (See *Nye v. Nye* (1952), 411 Ill. 408, 105 N.E.2d 300; *In re Marriage of Cripe* (1989), 183 Ill. App. 3d 37, 538 N.E.2d 1175.) The evidence was that Randy and Karen had married in July 1990, several months before the petition for modification was filed.

There was also evidence that Dawn had taken overnight trips with Courtney and Watts. Again, Dawn criticizes Randy for making this allegation when the evidence showed he had also taken some trips with Courtney and other women. This does not bear on the truth of Randy's allegation. Since Randy had remarried several months before he filed his petition, any such alleged misconduct on his part would be unlikely to recur and would not disqualify him from obtaining custody under the authorities just cited.

There was also evidence that Courtney spent significant amounts of time with Randy. Contrary to Dawn's contention, Randy's relationship with Courtney and the time and attention he gave to her were important factors for the court to consider in determining whether Courtney's best interests would be served by a change of custody. As the trial court commented at the modification hearing, it may not be in the best interest of a child to change custody if the noncustodial parent would not be a proper custodian.

The evidence also showed, by Dawn's own admission, that she had taken Courtney to restaurants where liquor was served after evening softball games. There was also evidence that on some occasions when Courtney would arrive at Randy's house in the mornings before school, she appeared tired and would sometimes fall asleep at the breakfast table. Although not significant, there was some evidence produced on the question of Courtney's dental needs. While these facts alone would not constitute grounds for a change in custody, the court could properly consider them for whatever effect they might have on Courtney's well-being. We do not agree with Dawn that the fact the trial court rendered its decision denying Randy's petition only the day after the hearing means the petition had no merit. Dawn cites no authority for this novel proposition.

Dawn points out that Randy failed to show any harm or detrimental effect on Courtney based on any of the alleged changes in circumstance. Under section 610(b) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 610(b)), the trial court must find that there has been a change in the circum-

stances of the custodian or the child and that modification is necessary to serve the best interest of the child. Factors to be considered by the court in determining what is in the child's best interests are set forth in section 602 of the Act (Ill. Rev. Stat. 1989, ch. 40, par. 602). While harm to a child would certainly be one factor bearing on the best interest of the child, section 602 of the Act indicates it is not the only one which the court should consider.

■ The trial court did not abuse its discretion in denying Dawn's petition for sanctions. It is not *per se* unreasonable to pursue a possible claim where the defendant has a strong defense. Nor is it *per se* unreasonable to present a possible defense simply because the plaintiff has a strong claim. (*Chicago Title & Trust Co. v. Anderson* (1988), 177 Ill. App. 3d 615, 622, 532 N.E.2d 595, 599.) Applying sanctions in a case like the instant one may have the undesired effect of discouraging parents from seeking custody of their children unless their case is a sure winner. That is clearly not a permissible use of Rule 137.

Finally, Randy asks us to impose sanctions on Dawn and her attorney under Supreme Court Rule 375 (134 Ill. 2d R. 375). He contends the instant appeal is frivolous and its filing was for the purpose of punishing and intimidating him by causing him to expend attorney fees in defending the appeal. Randy argues the appeal has no basis, because the trial court's decision could not be deemed an abuse of discretion under existing precedent. He also maintains Dawn's appeal was brought by her and Watts for personal reasons due to their supposed embarrassment and anger over the custody proceedings.

■ Under Rule 375(b), an appeal will be deemed frivolous where it is not reasonably well-grounded in fact and not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law. A party may also be sanctioned for bringing an appeal for an improper purpose such as to harass or to cause an unnecessary increase in the cost of litigation. (134 Ill. 2d R. 375(b).) The tone of Dawn's brief gives some support to the contention that she and Watts may have an ax to grind with Randy. If so, this court would not be the proper place to do that. Repeated use of exclamation points at the end of sentences and use of terms such as "ridiculous" and "ludicrous" to describe Randy's allegations in the trial court and his arguments on appeal are not appropriate for inclusion in an appellate brief. However, these facts alone are not dispositive of the question whether sanctions should be imposed.

■ We do not believe this is a proper case for the imposition of sanctions under Rule 375. Like Rule 137, the sanctions provided for in Rule 375 are penal in nature. (*Harris v. Harris* (1990), 196 Ill. App.

3d 815, 831, 555 N.E.2d 10, 21.) Thus, they should be applied only to those cases falling strictly within the terms of the rule. Although we have been unconvinced by Dawn's arguments on appeal, we do not find them to have been totally without merit or contrary to existing law. Unlike other cases in which sanctions have been applied, the instant appeal is not a "needless extension of a baseless lawsuit" (*Manchester Insurance & Indemnity Co. v. Strom* (1970), 122 Ill. App. 2d 183, 190, 258 N.E.2d 150, 153), nor are Dawn's arguments of the type which would warrant sanctions (see, *e.g., Britt v. Federal Land Bank Association* (1987), 153 Ill. App. 3d 605, 505 N.E.2d 387; *Aroonsakul v. Flanagan* (1987), 155 Ill. App. 3d 223, 507 N.E.2d 1; *Singer v. Brookman* (1991), 217 Ill. App. 3d 870, 578 N.E.2d 1, *appeal denied* (1991), 142 Ill. 2d 665, 584 N.E.2d 140). Thus, we decline to impose sanctions in this case.

The order of the trial court denying Dawn's petition for sanctions is affirmed.

Affirmed.

STEIGMANN and COOK, JJ., concur.