**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 190202-U

Order filed March 12, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| ROGER T. ADLER, | ) | Peoria County, Illinois |
| | ) | |
| Petitioner-Appellant, | ) | Appeal No. 3-19-0202 |
| | ) | Circuit No. 15-D-588 |
| and | ) | |
| | ) | Honorable |
| DAWN M. ADLER, | ) | Mark Gilles and |
| | ) | Lisa Y. Wilson |
| Respondent-Appellee. | ) | Judges, Presiding |

_____

JUSTICE O'BRIEN delivered the judgment of the court.
Justices Holdridge and McDade concurred in the judgment.

_____

**ORDER**

¶ 1        *Held*:   Trial court did not err when it allowed mother to temporarily relocate child to Ohio, when it delayed a determination on the relocation petition, and when it granted mother's petition for permanent removal.

¶ 2        The trial court granted respondent Dawn Adler's petition for relocation of Eli, the son she shared with petitioner Roger Adler, from Illinois to Ohio, finding relocation was in Eli's best interest. Roger appealed. We affirm.

¶ 3                                          FACTS

¶ 4         Petitioner Roger Adler and respondent Dawn Adler were married in October 2013 in Ohio. Their son, Eli, was born in July 2014, also in Ohio. Within a few days of Eli's birth, Roger left home in an emotional state and was involved in an automobile accident in Pennsylvania. Dawn's father, Jay Zweier, retrieved Roger and escorted him back to Ohio, where he participated in mental health treatment. In August, Roger, Dawn and Eli moved to Illinois, where Roger had taken a position as an ophthalmologist in Peoria.

¶ 5         On October 12, 2015, Roger and Dawn engaged in an argument where Roger smashed Dawn's cell phone against the wall besides Eli's crib. Dawn took Eli and left the house. Roger called 911, Dawn was stopped by the police and returned to the home. Roger was arrested. Dawn took Eli to her parents' home in Ohio. On October 23, 2015, Dawn sought and was granted an *ex parte* civil protection order, akin to an emergency order of protection, in Ohio against Roger and protecting herself and Eli. The order temporarily allocated parental rights to Dawn. It was later expanded to a five-year plenary order of protection but did not include Eli. On October 28, 2015, Roger filed a petition for dissolution of the marriage in Peoria County and sought custody of Eli. He also filed an emergency petition seeking an allocation of parenting time and argued that Dawn removed Eli without permission. On December 1, 2015, Dawn filed an emergency petition for temporary relief, seeking to remove Eli to Ohio and to restrict Roger's visitation. She also sought a temporary award of sole custody.

¶ 6         A hearing took place on December 4, 2015. Without hearing evidence, the trial court authorized Dawn to have temporary custody of Eli and ordered temporary supervised visitation for Roger, noting that an evidentiary hearing was needed to determine whether Eli's removal to Ohio was unauthorized. The court determined jurisdiction would need to be decided and acknowledged that Dawn had a protective order against Roger and raised allegations questioning

his ability to parent Eli, which the court felt it could not ignore. The court granted Roger visitation of two-hour supervised sessions every other Saturday and Sunday at the visitation center in Peoria. In mid-January 2016, Dawn stopped bringing Eli for visitation with his father, claiming Roger tried to poison Eli. Dawn filed an emergency motion to modify temporary supervised visitation and asked the court to suspend Roger's parenting time. She also sought and received another protective order in Ohio that covered her and Eli.

¶ 7 Roger responded to Dawn's emergency petition to modify temporary relief, leave to remove and to restrict visitation in April 2016, denying Dawn's allegations and asking the court to order Dawn to return Eli to Illinois. At a May 4, 2016, court date, the parties agreed that Illinois was Eli's home state, with Dawn arguing Ohio was a more convenient and appropriate forum to resolve the parenting issues. Per the court's direction, an agreed order was entered on May 27, 2016, providing that Dawn would present Eli for supervised visits with Roger, with the visits to alternate between Ohio and Illinois. The order also prevented Roger from giving Eli any food or drink during the visits due to Dawn's unfounded allegations Roger was poisoning her and Eli. After the second weekend of visitation under the agreed order, Dawn sought a temporary restraining order (TRO), alleging Roger violated the terms of the visitation order by arriving early for scheduled visits and by feeding Eli part of a banana. Dawn feared Roger would try to drug Eli and asked the court to prohibit him from seeing his son.

¶ 8 The court held its first evidentiary hearing on Dawn's motion for a TRO on June 20, 2016. Ben Corpus, who performed a drug screen analysis on Eli's hair at Toxicology Associates, Inc., testified for Dawn. He tested Eli's hair in early 2016 and found the presence of cocaine. The trial court found Corpus did not qualify as an expert witness and discarded portions of his testimony. The court also excluded the tests that Corpus claimed supported his conclusion that cocaine was

3

present in Eli's hair based on opposing testimony that included reports that did not demonstrate the presence of cocaine. On June 22, 2016, Dawn filed an emergency motion to modify Roger's supervised visitation, seeking it be suspended until Roger participated in mental health treatment.

¶ 9 The trial court announced its decision on Dawn's December 1, 2015, emergency petition for temporary relief, to remove and to restrict visitation at an August 25, 2017, hearing. The court found no basis in Dawn's claims that Roger poisoned Eli or gave him cocaine or that Roger poisoned Dawn or the family dog. The court found there was an incident of domestic violence on October 12-13, 2015, and there had been a prior physical incident between the parties in Ohio when Dawn was pregnant. The court considered that Roger did not stalk Dawn, hack her computer or socially or economically isolate her. The court found that Roger had suffered a mental health breakdown after Eli's birth, had been regularly seeking treatment and did not have a diagnosis of psychosis. The court reviewed a mental health evaluation done for the Illinois Department of Financial and Professional Regulation, which submitted a diagnosis for Roger of anxiety and depressive disorders with no evidence supporting claims of psychosis, patterns of violence or antisocial behavior. The court concluded there was no reason to restrict Roger's visitation and removed the requirement that his visits be supervised. It ordered the parties to create a graduated schedule for parenting time to include full weekends and longer blocks of time, resulting in an ultimate 50/50 split of parenting time until Eli started school. Roger was ordered to continue to undergo regular drug tests and participate in mental health counseling.

¶ 10 At a November 2017 visitation review hearing, Roger argued that he wanted Eli returned to Illinois, the court to enforce the removal statute and to schedule makeup time with Eli to account for when Dawn withheld visitation. He maintained Eli's removal was unlawful as it was without a court order or an agreement between the parties. Dawn responded that the December 4, 2015,

4

order granted her temporary custody until an evidentiary hearing took place. The court found the unsupervised visits were going well and that Roger was compliant with his drug tests and counseling requirements. The court ordered overnight visitation to begin over the Thanksgiving holiday and then on alternate weekends with the parents exchanging Eli at a location halfway between their homes. The court altered the visitation schedule several times to accommodate changes in schedules and to allow Roger to take Eli on vacation.

¶ 11       In January 2018, the court began its hearing on Dawn's request to relocate. The court took notice of the testimony and evidence submitted in the prior hearings. A settlement conference took place with the parties' lawyers and the trial court in chambers. The parties announced an agreement in open court that Eli could relocate to Ohio with Dawn. However, Roger's counsel thereafter withdrew and Roger maintained that he did not agree to the relocation of Eli. The court found the parties' agreement could not stand and hearings continued on the relocation issue. In August 2018, in anticipation of Eli enrolling in kindergarten the following fall, the court ordered longer block-time visits of two weeks for Roger for the next year. In a March 19, 2019, order, the trial court granted Dawn's petition to relocate, finding that the statutory factors supported relocation. Roger appealed.

¶ 12                                            ANALYSIS

¶ 13       The issues on appeal are whether the court erred in addressing the issue of relocation, in delaying the relocation determination and in finding the statutory factors supported relocation. Also on appeal is whether the court erred in restricting Roger's parenting time without holding an evidentiary hearing.

¶ 14       We first address whether the trial court improperly considered the relocation issue. Roger argues that Dawn never petitioned for relocation and the court never allocated custody or parental

responsibility to either parent, prerequisites for a relocation determination. According to Roger, because the court acted out of sequence, its relocation order is void.

¶ 15    Until December 31, 2015, the removal statute provided that the court could grant leave to any party having custody of a child to remove the child from Illinois. 735 ILCS 5/609(a) (West 2014). The party seeking removal had the burden to prove removal was in the child's best interest. *Id.* Before temporarily removing a child, the custodial parent was required to provide contact information to the other parent or his or her attorney and the date the child would be returned to Illinois. 750 ILCS 5/609(b) (West 2014). Beginning January 1, 2016, the statute was amended and substituted "relocation" for "removal." 750 ILCS 5/600 *et seq*. (West 2016). The amended statute provided that relocation of a child may be sought by a parent who has been allocated the majority of or equal parenting time. 750 ILCS 5/609.2 (West 2016). The parent seeking relocation must provide notice of the relocation to the other parent and file a copy of the notice with the court. 750 ILCS 5/609.2(c) (West 2016). Notice must be provided 60 days prior to relocation unless the notice is impractical. 750 ILCS 5/609.2(d) (West 2016). The notice must indicate the date of relocation, the parent's new address, and the length of time of relocation. *Id.* Where the other parent objects to relocation, does not sign the required notice to allow relocation or the parents cannot agree on a modified parenting plan or allocation judgment, the parent seeking to relocate must petition the court for permission to relocate the child. 750 ILCS 5/609.2(f) (West 2016). We review whether the trial court complied with statutory requirements *de novo*. *Figueroa v. Deacon*, 404 Ill. App. 3d 48, 52 (2010).

¶ 16    Dawn never filed a petition to remove or relocate Eli, other than the emergency petition for leave to remove filed on December 1, 2015. Throughout the proceedings, Roger consistently argued that the removal was unauthorized as there was neither an agreement nor a court order

6

allowing Dawn to relocate with Eli to Ohio. Although it appears he raised the issue of a lack of petition, he thereafter waived any challenge to the procedural defect. At a December 19, 2017, motion hearing, Dawn's attorney sought clarification as to what petition for removal on which the parties would proceed for the removal hearing. Roger agreed that the parties would proceed on Dawn's emergency petition for removal filed December 1, 2015. At the removal hearing, the parties acted in accord with that agreement. Roger cannot on appeal challenge a procedure he suggested and agreed to follow in the trial court. *In re Marriage of Reidy*, 2018 IL App (1st) 170054, ¶ 29 (doctrine of invited error prevents a party from complaining of an error to which the party consented) (citing *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004)). We find there was no error in proceeding on Dawn's emergency petition to relocate.

¶ 17     The next issue is whether the trial court erred in delaying the relocation hearing for more than two years after Dawn moved Eli to Ohio. Roger maintains that he consistently sought to advance the proceedings in a timely fashion but was hampered, along with the court, by issues raised by Dawn.

¶ 18     Cases involving custody determinations are to be scheduled and heard on an expedited basis. Ill. S. Ct. R. 901(a) (eff. Sept. 1, 2013). A decision regarding the allocation of parental responsibilities must be resolved within 18 months from the date the petition or complaint was filed to final order. Ill. S. Ct. R. 922 (eff. July 1, 2006). The time may be extended by agreement and for good cause shown. *Id.* A trial court has inherent authority to control its docket, including its authority to prevent undue delays caused by abuses of the process. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 195-96 (2007). Where "this case concerns the future of a young child, *** the specter of delay is especially troublesome." *Id.* at 196. We review a trial court's decisions regarding the

7

management of cases for an abuse of discretion. *Johnson v. Ingalls Memorial Hospital*, 402 Ill. App. 3d 830, 847 (2010).

¶ 19    There is no question this case proceeded in contravention of the directives and spirit of the rules for expediting cases concerning child custody, also known as parenting responsibilities. This fact was not lost on anyone involved in the proceedings. Indeed, the trial court repeatedly bemoaned the fact that the issue of relocation remained pending for a considerable amount of time, during which Eli was living in Ohio when no evidentiary hearing had taken place to support the relocation. The court also recognized its responsibility to address Dawn's contentions regarding Roger's ability to care for Eli and her belief that parenting time with Roger would seriously endanger Eli's mental, moral or physical health or impair his emotional development. The court properly addressed Dawn's allegations, despite the fact that it prolonged the commencement of the removal hearing. The court was bound to act in Eli's best interest and it could not reasonably dismiss Dawn's concerns without hearing evidence regarding them. Roger wanted and was entitled to parenting time with Eli but the court was charged with ensuring the parenting time did not harm Eli. The compromise was for the court to order supervised visitation on a temporary basis until it heard evidence on Dawn's claims. Ultimately, it was determined that Roger's health was not an impediment to his ability to care for Eli and the court made an effort to provide make-up parenting time to Roger. The court was further hindered by scheduling difficulties, including finding time mutually acceptable to the parties' attorneys and reserving adequate time in the court's docket to address the issues raised. Contrary to Roger's assertions, both he and Dawn contributed to the protracted proceedings here. On the basis of the record before us, we consider the trial court did not abuse its discretion in managing its docket.

¶ 20    We now address Roger's argument that the court erred in allowing Dawn to relocate Eli on a temporary basis. He challenges the lack of evidentiary hearing before the trial court initially granted Dawn the right to remain in Ohio with Eli, which he says was effectively a grant of permanent relocation. According to Roger, there was no statutory authority for the court to allow Dawn a temporary relocation but it could have prohibited her from removing Eli from Illinois for more than 14 days. We review whether the trial court employed the appropriate legal standard *de novo*. *In re Marriage of Sobol*, 342 Ill. App. 3d 623, 627 (2003).

¶ 21    The court is authorized to enter temporary orders regarding custody or parenting time based on the child's best interest. 750 ILCS 5/603(a) (West 2014); 750 ILCS 5/603.5(a) (West 2016). A hearing is necessary under either the old or new version of the statute. 750 ILCS 5/603(a) (West 2014); 750 ILCS 5/603.5(a)(i) (West 2016). The purpose of the temporary order provisions is to "(1) encourage informal and agreed determinations of temporary custody and visitation, (2) accelerate the process of awarding temporary custody and visitation through the use of affidavits, and (3) minimize disruptions in children's lives by providing stability in their living environment and relationships with their parents as quickly as possible." *In re Marriage of Fields*, 283 Ill. App. 3d 894, 904 (1996). Temporary orders, which are provisional in nature, are superseded when a final order is entered disposing of the issue on the merits. *In re Marriage of Stone*, 164 Ill. App. 3d 1046, 1050 (1987). We will not reverse a temporary order unless it was against the manifest weight of the evidence. *Levy v. Skilling*, 136 Ill. App. 3d 727, 729 (1985).

¶ 22    The trial court noted on several occasions that Eli was in Ohio with Dawn without an agreement of the parties or an order of the court. It acknowledged no evidentiary hearing had taken place. As discussed above, it felt compelled, and rightly so, to address issues pertaining to Eli's safety and welfare and Roger's right to spend time with his son. Unfortunately, the numerous

9

pleadings and hearings prevented the court from considering the removal issue until it resolved other pressing concerns.

¶ 23    At the December 2015 hearing, the court recognized the order of protection Dawn had acquired in Ohio, which granted her temporary custody of Eli and prohibited Roger from contact with her or Eli. At that time, the court was unclear as to which state had jurisdiction, as Dawn had been in Ohio for a number of months and sought protection under the Ohio courts. Because of the concerns about Eli's safety and welfare raised by Dawn, the court fashioned a resolution that would meet both parties' needs: Eli would remain with Dawn and Roger would have supervised parenting time with Eli in Illinois. The express intent of the court was to timely move to an evidentiary hearing on the relocation issue after the jurisdictional question was resolved. However, the filing of other pleadings and the scheduling problems discussed earlier, caused delays and necessitated the evidentiary hearing being heard over a number of days over the course of many months.

¶ 24    While Roger claims the temporary order unfairly favored Dawn by allowing her to become the parent allocated parenting time by default, he was not without recourse. Roger failed to timely file an interlocutory appeal challenging the deficiencies in the court's December 2015 order allowing Dawn temporary custody or the orders restricting his parenting time. See Ill. S. Ct. R. 306(a)(5) (eff. July 1, 2014) (interlocutory appeal by permission from temporary orders affecting the care and custody of a child or the allocation of parental responsibilities or relocation of a child). The temporary order allowing relocation ceased to be effective upon the court's entry of the order allowing relocation. *Stone*, 164 Ill. App. 3d at 1051. Roger also failed to petition the court for an injunctive order enjoining Dawn from removing Eli from Illinois for more than 14 days. 750 ILCS 5/501(a)(2)(ii) (West 2016). Although we agree that there arguably is merit to Roger's assertions, he missed his opportunities to bring them before the court.

10

¶ 25    We next consider whether the trial court erred in restricting Roger's parenting time with supervised visitation before it heard evidence and without making findings to support the restriction. He argues the restrictions were improperly placed on his parenting time without an evidentiary hearing or findings to support them.

¶ 26    A parent's right to parenting time with his child may not be restricted unless the court finds after a hearing that parenting time would seriously endanger the child's physical, mental, moral or emotional health. 750 ILCS 5/607(c) (West 2014). The court may restrict parental responsibilities when it finds after a hearing that the "parent engaged in any conduct that seriously endangered the child's mental, moral, or physical health or that significantly impaired the child's emotional development." 750 ILCS 5/603.10(a) (West 2016). Restrictions may include supervision and any "other constraints or conditions that the court deems necessary to provide for the child's safety or welfare." 750 ILCS 5/603.10(a)(9) (West 2016). The restriction of parental responsibilities requires the court to engage in two steps. *In re Marriage of Mayes*, 2018 IL App (4th) 180149, ¶ 58. First, it must make a factual determination that the parent has engaged in conduct that seriously endangers the child. *Id.* If the court makes that finding, it then must draft orders necessary to protect the child. *Id.* A trial court's determination on parenting time issues, including whether it should be restricted will not be overturned on appeal unless it was against the manifest weight of the evidence and it appears a manifest injustice occurred. *In re Marriage of Krivi*, 283 Ill. App. 3d 772, 775 (1996).

¶ 27    In her December 1, 2015, emergency petition, Dawn put forth a litany of accusations against Roger, including that his conduct caused her to be fearful for her and Eli's safety; he owned a gun; he was facing charges stemming from a domestic violence incident; he violated the terms of the Ohio civil protection order; his psychiatrist deemed him a sociopath and psychotic; Roger

11

was abusive toward Dawn; he suffered from serious mental health issues; and Roger participated in unhealthy relationships and had questionable friends. There was a pending order of protection in Ohio that granted Dawn temporary custody of Eli. Although the parties agreed Illinois was Eli's home state, they were not in agreement as to whether Illinois or Ohio should decide custody. The court expressed that the restrictions on Roger's visitation could turn out to be incorrect but because of the current allegations from Dawn and the existence of the Ohio civil protection order, the court determined supervised visitation was necessary. We agree with the trial court. At the time of the December 2015 order requiring Roger's parenting time be supervised, Dawn had alleged a variety of serious accusations against Roger which questioned his ability to safely parent Eli. The court was required to serve Eli's best interest, and restricting Roger's visitation, based on the allegations before the court, served Eli's best interest. Moreover, the court thereafter starting hearing evidence in support of Dawn's allegations that resulted in the restricted parenting time. We find the court did not err in temporarily restricting Roger's visitation and parenting time.

¶ 28    The final issue is whether the trial court erred in granting Dawn's petition to relocate. Roger argues the court failed to properly consider the removal factors and placed too much emphasis on factors that occurred after Dawn relocated.

¶ 29    In deciding whether to allow relocation, the court considers the following factors:

> "(1) the circumstances and reasons for the intended relocation;
>
> (2) the reasons, if any, why a parent is objecting to the intended relocation;
>
> (3) the history and quality of each parent's relationship with the child and specifically whether a parent has substantially failed or refused to exercise the parental responsibilities allocated to him or her under the parenting plan or allocation judgment;

12

(4) the educational opportunities for the child at the existing location and at the proposed new location;

(5) the presence or absence of extended family at the existing location and at the proposed new location;

(6) the anticipated impact of the relocation on the child;

(7) whether the court will be able to fashion a reasonable allocation of parental responsibilities between all parents if the relocation occurs;

(8) the wishes of the child, taking into account the child's maturity and ability to express reasoned and independent preferences as to relocation;

(9) possible arrangements for the exercise of parental responsibilities appropriate to the parents' resources and circumstances and the developmental level of the child;

(10) minimization of the impairment to a parent-child relationship caused by a parent's relocation; and

(11) any other relevant factors bearing on the child's best interests." 750 ILCS 5/609.2(g)(1)-(11) (West 2016).

¶ 30 When ruling on a petition to relocate, the trial court's paramount consideration is the child's best interest. *In re Marriage of Eckert*, 119 Ill. 2d 316, 325 (1988); 750 ILCS 5/609.2(g) (West 2016). A child may be relocated from Illinois where the relocation serves the child's best interest. *Krivi*, 283 Ill. App. 3d at 774. The party seeking relocation bears the burden of proving it is in the child's best interest. *Id.* We will not reverse a trial court's decision regarding relocation unless it was against the manifest weight of the evidence or it appears that a manifest injustice occurred. *In re Marriage of Fatkin*, 2019 IL 123602, ¶ 32 (citing *Eckert*, 119 Ill. 2d at 328).

13

¶ 31    The court submitted a lengthy order detailing its findings regarding each of the applicable statutory factors. The first factor, the circumstances and reasons to relocate, include Roger's act of domestic violence against Dawn, which caused her to go to her parents' home in Ohio. Dawn was able to rely on her parents to assist her with financial and emotional support for herself and Eli. They also were available to help with day care and other needs Eli might have. Dawn eventually enrolled in a master's program in Ohio, which she submits assists her with employment connections in Ohio. In contrast, Dawn nor Roger had any family in Illinois and Dawn was new to the Peoria area and had not developed any local support systems. We find this factor favors Dawn.

¶ 32    The second factor are the reasons Roger objected to the relocation. Roger raised legitimate concerns about his ability to foster a continued relationship with Eli, who lives more than 400 miles away. The distance prohibits Roger from participating in Eli's day-to-day life, such as attending preschool and school functions or other extracurricular activities in which Eli is engaged. As Roger argues, the distance also prevents him from having consistent visitation with Eli and puts a burden on all parties, including Eli, to travel on a regular basis between Ohio and Illinois. The distance will serve to further interfere with Roger's ability to engage with Eli when Eli is in school and has limited free time to travel. This factor favors Roger.

¶ 33    The third factor is the history and quality of each parent's relationship with the child and whether the parent has failed to exercise his parenting time. Dawn has handled the majority of caretaking duties for Eli. During a short period of time after Eli's birth she was solely responsible for his care when Roger was treated for mental illness. Dawn was a stay-at-home mother at that time and continued to remain unemployed throughout the pendency of these proceedings. Dawn enrolled Eli in preschool in Ohio and he attended preschool when he lived in Illinois. When Eli

14

lived in Illinois, Roger spent minimal time with Eli due to his work schedule but was not uninvolved in Eli's life. Roger participated in the time he was allocated in the temporary parenting orders, challenging the restrictions and seeking additional time with Eli. Neither Dawn nor Roger failed to exercise their parenting time or fulfill their parenting responsibilities. Dawn did not let Roger see Eli from October 2015 to December 2015 and interfered with Roger's court-ordered parenting time by preventing Roger from seeing his son. The court noted Roger's mental health issues and treatment but found he "has shown more stability and demonstrated his desire to exercise a greater role in his responsibilities and relationship with Eli." This factor slightly favors Roger.

¶ 34    Fourth, we look at the educational opportunities for the child. Dawn presented evidence regarding several private schools and some public schools in Ohio and opined that they were better than the private or public schools in Peoria. Roger contends Eli could receive a comparable education in Illinois. The court found this factor neutral as appropriate educational opportunities exist in both states.

¶ 35    The fifth factor is the presence or absence of extended family at either location. Roger has no blood relatives in Illinois, but his fiancée lives in Illinois and she has several grandchildren who are close to Eli. Roger's parents and siblings live across the country. Dawn lived with her parents in Ohio. Her fiancé lives in Ohio, as do his parents. Dawn's siblings live across the country. Eli is strongly bonded with his grandparents. This factor favors Dawn.

¶ 36    Next, we consider the impact of relocation on Eli. He has been living in Ohio since October 2015. The court considered that Eli is thriving in his current environment but noted Roger's concerns that the extensive travel is not beneficial to Eli and is dangerous to him. Eli is enrolled in school in Ohio and participates in a religious community there. He has local friends. The impact

15

on Eli when Dawn left Illinois with him was minimal. He was just over a year old. He had spent several months after his birth living with Dawn's parents and returned there regularly with Dawn after the family moved to Illinois. He had been enrolled in day care in Illinois prior to the relocation but his withdrawal from it had no apparent impact. This factor also favors Dawn.

¶ 37    The seventh factor is whether the court can craft a reasonable allocation of parental responsibilities. The court acknowledged that despite the animosity between the parties early in the proceedings, they have been able to work together on temporary parenting schedules and reached agreement on major decision making for Eli. Dawn has offered to be flexible to ensure Roger has as much time with Eli as is feasible. Roger has expressed a desire and willingness to spend as much time with Eli as the parties can fashion. The court has been able to create a parenting schedule based on the parties' input and agreement. This factor is neutral or favors both parties.

¶ 38    The next factor is the child's wishes. Eli is too young to express his opinion, but the court found the trial evidence established that Eli had a close relationship with both parents.

¶ 39    The ninth factor is the possible arrangements for the exercise of parental responsibilities. Both parents are involved in decision making for Eli. He attends preschool in Illinois and in Ohio and Dawn and Roger are both interested in providing Eli with the best possible education. Dawn has expressed a willingness to facilitate additional time for Roger in Illinois or allow him additional time with Eli in Ohio. By all accounts, Eli is happy in both his homes and Dawn and Roger are committed to ensuring his happiness. We are confident they will use that commitment to continue to share parental responsibilities in Eli's best interest, including agreeing on a parenting plan. This factor is neutral.

¶ 40    The tenth factor is the minimization to the parent-child relationship. The court pointed to the considerable time Roger has spent with Eli since the parenting time restrictions were lifted and

16

to Dawn's offer to work on a parenting schedule that will not reduce Roger's time with Eli once he is enrolled in school. The blocks of time Roger will have with Eli on school breaks will enable them to strengthen the father-son bond they have developed over the course of these proceedings. During the periods between visits, Eli is able to Skype with Roger. In spite of the litigious early portion of these proceedings, Dawn now appears willing to ensure that Eli maintain a relationship with his father. She apparently employs a hard rule that no one may speak ill of Roger in Eli's presence. She has offered flexibility in bringing Eli to Illinois for additional time with Roger and Roger may travel to Ohio to see Eli, which Dawn would accommodate. Roger has expressed willingness and desire to attend Eli's events in Ohio, schedule permitting and Dawn offered to Skype what she could so Roger could participate. This factor favors removal.

¶ 41 Based on the statutory factors, we find the trial court did not err in granting Dawn's petition for relocation.

¶ 42                                        CONCLUSION

¶ 43 For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 44 Affirmed.

17